## NICHOLSON vs. THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The charter of incorporation of a railroad company provided, that the company might enter upon and use all such real estate as should be necessary for them; that they should be holden to pay all damages that should arise to any person or persons thereby, and prescribed the manner of assessing the damages, if the person or persons to whom such damages should arise, could not agree as to the amount of the same. It also contained the following provision: " Whenever for the construction of their said railroad, it shall become necessary to intersect or cross any stream of water, or water-course, or any road or highway, it shall be lawful for said company, to construct said railroad across or upon the same, but said company shall restore the said stream or water-course, or road or highway, thus intersected, to its former state, or in sufficient manner not to impair its usefulness." A public street, in a city where it was intersected by such road, was carried over it on a bridge, and raised on each side of the bridge by embankments, so as to accommodate its height to the height of the bridge. It appeared, that the public safety required that the railroad should pass under the street, and that the change made in the street by such bridge and embankments, was one of the alterations provided for in the charter of the company. B, owning land with buildings thereon, lying upon each side of said street where it was so raised, and no compensation having been made to him, and no damages assessed therefor, brought his action against the company, for the injury caused by the erection of such embankments. It was held, 1. That the power to regulate, alter and repair highways, might be delegated by the legislature, to subordinate corporations, subject to the liability of making compensation for the property taken and injury occasioned. 2. That the acts of the defendants in question, being for the purpose of making one of the alterations in a highway contemplated in the defendants' charter, were authorized thereby. 3. That although the plaintiff might recover on a count in trespass, for any appreciable, incidental damages, occasioned by the acts complained of, the defendants were not liable therefor, of course, and as *prima facie* trespassers, and that it was a question for the jury to decide, whether the plaintiff had sustained any such damages thereby, or had not.

The action of trespass is a proper remedy for such damages.

Where in such action, the judge charged the jury, that the plaintiff could recover, of course, on a count in trespass, but that the damages should be nominal, unless special damages were proved, and the jury returned a verdict for $3000 in favor of the plaintiff; held, that although the charge was incorrect, inasmuch as it withdrew from the consideration of the jury the

Nicholson *v.* New York and New Haven Railroad Company.

question, whether the plaintiff was injured or not, yet, as the defendants did not suffer from the ruling of the court, they were not, on that account, entitled to a new trial. Held, also, that as the amount of such damage was a matter of opinion, in relation to which the witnesses differed greatly, and there was no evidence that the jury had acted corruptly or disregarded the instructions of the court, the defendants were not entitled to a new trial, on the ground of excessive damages.

THIS action was brought against the New York and New Haven Railroad Company, to recover damages for injury to the plaintiff's land, which was situated on both sides of Cherry street, in the city of New Haven.

The declaration embraced two counts, one of which was in trespass, and the other, trespass on the case.

The defendant pleaded the general issue. The cause was tried at New Haven, October term, 1851.

Upon the trial it was proved and admitted, that the plaintiff was the owner in fee, of two lots and the buildings thereon, in the declaration described, and that while he was so owner, the defendants made an embankment on that part of Cherry street which lies between said lots of the plaintiff, said Cherry street having been long a public highway. The plaintiff's land extended on each side, so as to meet at the center of said street, subject to the right of the public to the same, as a public highway. The land and road of the company extended to, and lay adjoining said lots of the plaintiff; on the south-easterly side of the same. Cherry street passes from State street to Union street, and the depot building of the defendants adjoins Union street on the south-east and Cherry street on the south-west. The depot building of the defendants is separated from the northerly lot of the plaintiff, by the space occupied by the trenches of the railroad. The railroad of the defendants was constructed across Cherry street, in the bed of a canal which had been discontinued, and over which the street was carried by a bridge. The defendants found it necessary, for the safety of

the public, to have their road pass under Cherry street, and for that purpose, it became and was necessary, that the bridge at that point, should be raised as high as it was raised by the defendants. The bridge being raised, it became necessary to make the embankment in Cherry street, and this alteration was one which is provided for in the defendants' charter. The embankment was about          feet high at the bridge, and the grade descended to the grade, at the south-eastern side of State street. When the embankment was made by the defendants, the plaintiff owned and occupied a brick store on his north lot, adjoining the rear of which, was a wooden addition opening into the same, near the middle of which, on Cherry street, was a door for receiving and delivering goods, the sill of which was about three feet above the sidewalk. On the south lot was also a brick store, in the rear of which was an old wooden building, fronting on Cherry street, with a door in front, and also one on the side, communicating with a door in the back end of the store. There was no door in the principal store, on the main floor, opening into Cherry street, but there was a cellar door, slanting outward, through which goods could be received into the cellar and delivered out. The embankment, on the north side, came above the sill of the door in the wooden building. On the south side, it covered the cellar door and prevented access to the wooden building in the rear, from Cherry street.

The charter of said railroad company provides " that for the purpose of constructing said road, they may lay out the same, not exceeding six rods wide, through the whole length, and for the purpose of cuttings and embankments, and of necessary turn-outs, and for obtaining stone and gravel, may take as much more land as may be necessary for the proper construction and security of said road," with a proviso, " that all damages that may be occasioned to any person or corporation, by the taking of any such and or materials aforesaid, shall be paid for by said company." It

afterward declares " that said company shall be holden to pay all damages that may arise to any person or persons whatsoever." It then proceeds to prescribe the manner in which damages shall be assessed, in case the person or persons to whom damage may so arise, and the company, can not agree as to the amount of the same. In a subsequent section, the company is authorized, whenever it shall be necessary for the construction of their road, to intersect any road or highway, to construct said railroad across or upon the same, but they are required to restore said road or highway, thus intersected " to its former state, or in sufficient manner not to impair its usefulness."

The plaintiff offered evidence tending to show that, the embankment had compelled him to raise the north store about three feet, and to raise the building in the rear of it about one foot ; that he was also compelled to close the door, opening from the wooden building into Cherry street, and open another, near its junction with the wooden building ; that the expense of this was          dollars. That the door on Cherry street was not as convenient as before ; that the elevation of the floor of the back building, about a foot higher than the floor of the other, was an inconvenience ; that the raising the building rendered it necessary to have three steps to the front door, entering by a recess into the store, which rendered the access inconvenient, and that there was damage, over and above the expense, to the amount of          dollars. He also offered evidence tending to show, that he was obliged to raise the store on the south lot about two feet ; that there was the same inconvenience about the front door ; that the use of the cellar was in a great measure cut off, and that he was obliged to remove the building in the rear, and, to enable him to improve the rear property, he was obliged to erect an additional building of brick ; that the necessary expense, other than the expense of the new building, was          , and that the damage, over and above the ne-

cessary expenses, was     .   The plaintiff further claimed, that, inasmuch as it was admitted that the defendants had not had any damages appraised to the plaintiff, according to the provisions of their charter, the plaintiff could recover, on the count in trespass, whether he proved any actual damage or not.

The defendants offered evidence tending to show, that the plaintiff had sustained no actual damage ; that the stores of the plaintiff, by being raised, presented a much better appearance than they would have had ; that the south store did not need to be raised at all, but could have been used as conveniently and profitably as before, without being raised. That the building in the rear, was a mere storehouse with only an outside covering, only a part of which stood on the land of the plaintiff; that it might still have been used in connection with the store ; that the cellar door was of but little account, and that the embankment enabled the plaintiff to erect an addition to his store in the rear, with a floor on the same level with the floor in front, with a door opening conveniently into Cherry street, which would not have been done, as the street was, before the embankment was made ; that there was no necessity of raising the rear building on the north side, any higher than that in front, so that the floors might have been on a level ; that, if the doors in front were less convenient for one purpose, they were more so for another, and that, aside from any benefit which the building of the railroad was to the property, there was no damage to the buildings or property, over and above the necessary expense of adapting them to the situation of the streets, after the construction of the railroad.

The defendants also offered evidence to show, that the property of the plaintiff in question had, since the construction of the railroad, increased in value, to a greater amount than the whole expense of the plaintiff, which had been incurred in consequence of the acts of the defendants ; that

Nicholson *v.* New York and New Haven Railroad Company.

this was owing, in part, to the general benefit which the city as a whole, derived from the construction of the railroad, but chiefly, to the proximity of the railroad and its depot, to the property in question; and prayed the court to instruct the jury, that if, owing to the latter cause, the plaintiff's property was worth as much as it would have been, if no railroad had been built and no embankment had been made by the defendants, and so the plaintiff had sustained no actual damage, the plaintiff could not recover, on the count in case; and also, that he could not recover on the count in trespass, inasmuch as the acts in question were authorized by the charter of the defendants, subject only to a liability to pay damages, where persons had actually sustained them. The defendants further claimed, that the court should charge the jury, that if they should find for the plaintiff, they ought to find only such damages as the plaintiff had sustained, taking into consideration the beneficial effect of the construction and use of the railroad upon the premises of the plaintiff. The plaintiff claimed, that the beneficial effects of the railroad and depot upon the plaintiff's property, could not be taken into consideration. The court charged the jury as follows :—

As to the first claim made by the plaintiff, that on the facts conceded and proved, the plaintiff could recover, of course, on the count in trespass, the court instructed them, he could, but the damages should be nominal, unless special damages were proved.

And, as to the right to recover for the damages stated in the second count, in case, the court instructed them, these were only incidental or consequential to the construction of said embankment, admitted to be a necessary part of said railroad, and made under the provisions of their charter. That, inasmuch as the plaintiff claimed to recover for this, as done by the defendants, the jury might and should, under this charter, take into the estimate of damages, and allow

the defendants, not any general advantages to the city and citizens at large, but the local, personal and particular advantage to the plaintiff's premises, occurring from the construction and use of the railroad and embankment upon the same.

The jury returned a verdict in favor of the plaintiff, for 3000 dollars damages, and his costs; and the defendants moved for a new trial, on the grounds of a misdirection, and because the verdict was against the evidence in the cause.

*Dutton,* and *Kimberly* and *Beach,* contended, First, That the court ought not to have instructed the jury, that the "plaintiff, on the facts conceded and proved, could recover, of course on the count in trespass, without proving damage."

The facts were, that the plaintiff owned two lots, divided by Cherry street, and the railroad of the defendants was located across Cherry street, next adjacent to the lots of the plaintiff. The defendants, in the construction of their road, found it necessary, for the safety of the public, to have their railroad pass under Cherry street; and the acts complained of in the second count, were done pursuant to the tenth section of the charter of said company, in "restoring" said Cherry street "to its former state, or in a sufficient manner not to impair its usefulness."

*Secondly,* If the plaintiff has sustained any special damage, by reason of the raising of the street, the defendants, not having had the damage assessed, are liable; but we claim that, without such damage proved, there is no liability.

*Thirdly,* The defendants can not be made liable, on the count in trespass, unless their acts were wrongful, at the time they were done, or, being rightful at the time, have become wrongful, by reason of some omission of duty on their part.

I. Their acts were not wrongful, at the time they were done. Their charter authorizes them to construct their railroad across or upon any highway it may be necessary to

cross, and authorizes and compels them to restore such highway to its former usefulness.  Private Acts, 1844, 65. *Bradley* v. *New York and New Haven Railroad Co.*, 21 Conn. R., 310.  And the facts conceded show, that the acts complained of, were done under, and in pursuance of, such authority.

II.  There was no omission of duty, on the part of the defendants, by which these acts became wrongful.  The only omission claimed is, that the defendants "have not had any damages appraised to the plaintiff, according to the provisions of their charter."  The charter provides, that the assessors shall appraise damage to land "taken or injured." Private Acts, 1844, 62.  The land was not "taken," nor is it claimed to have been.  The only other alternative, calling for any action of the assessors, is that of "injury."  And the ground of our complaint is, that, by the ruling of the court, this question is expressly withdrawn from the jury, and they are instructed to find for the defendant, although there was no "injury," no damage.

*Fourthly*, It is no answer, to say that we are in no worse position, in consequence of such ruling.  The decision extends beyond the individual case, and is pregnant with mischief.  A party is always injured, by withdrawing from a jury all possibility of a favorable verdict.

*Fifthly*, The damages, awarded by the jury, were excessive, contrary to the weight of evidence, and in disregard of the instructions of the court.

A new trial will always be granted, where it appears that the instructions of the court, upon matters of law, have been disregarded by the jury.  *Thomas* v. *Hatch*, 3 Sumner, 184. *Wendell* v. *Stafford*, 12 N. Hamp. R., 171.  The evidence detailed in the motion shows, that the jury must have disregarded the instructions of the court, "that in their estimate of damages, they should allow the defendants the local, personal, and particular advantage to the plaintiff's premises, occurring from the construction and use of the railroad.

The weight of the evidence is, that the property was bene-fited, to an equal or greater amount, than the sum expended.

*Baldwin* and *R. I. Ingersoll*, contra, contended, 1. There was no error in the charge of the court, as to the right to recover, on the count in trespass. *Trustees of the Presbyterian Society in Waterloo* v. *Auburn and Syracuse Railroad Company*, 3 Hill, 567. *Seneca Road Company* v. *Auburn and Rochester Railroad*, 5 Hill R., 170. Unless the railroad company owned the land, or had the general rights of owner, or had taken measures for the payment of damages, they must be considered as trespassers. *Bradley* v. *New York and New Haven Railroad Co.*, 21 Conn. R., 312. In New York, it has been held, that when the defendants have not 'followed the directions of the act, relative to the compensation to be made to the owners of land, through which a turnpike road has been made, they were trespassers. *People* v. *Hinsdale and Chatham Turnpike Co.*, 2 Johnson's R., 190. Approved in *Hooker* v. *Northampton Co.*, 15 Conn. R., 324.

*Secondly*, The charge could not have injured the defendants, for the court instructed the jury, that the damages for the trespass should be nominal, unless special damages were proved. The jury having found, that there were special damages, the plaintiff would be fairly entitled to them, under the count in case, irrespective of the trespass, and substantial justice having thus been done, the court will not order a new trial. Such has been the uniform course of decisions in this court, in analogous cases.

*Thirdly*, The defendants do not complain of the rule of damages given to the jury, by the court, but that the damages awarded by the jury "were unreasonably excessive, and contrary to the weight of evidence in the case."

Even if the court should be of the opinion, that the verdict was against the weight of the evidence, they would not grant a new trial; for, as was said in the recent case of

*Clark* v. *Whitaker*, 19 Conn. R., 319, " It is necessary, that the verdict should, in the opinion of the court, be manifestly and palpably erroneous ;" and, " it is not sufficient for the defendants, who seek a new trial, for the excessiveness of the damages, merely to raise a doubt, whether they are not too large ; but it is incumbent on them, to show, affirmatively and most satisfactorily, that they are so, and to what extent."

HINMAN, J.    The declaration contains a count in trespass, for making an embankment on the plaintiff's land, in Cherry street, in New Haven, where that street divides the land into two separate lots, one being on each side of it. The defendants' railroad is not constructed upon the plaintiff's land, but is bounded by it, where it crosses Cherry street, as far as his land extends.

The motion states, that the public safety required, that the railroad should pass under Cherry street; and for that purpose, it was necessary, that the street should be carried over it, by means of a bridge, and that it should be sufficiently filled up, at the point where it crosses the plaintiff's land, to accommodate its grade to the height of the bridge. Such alterations of highways, where the railroad is made to cross them, are contemplated in the defendants' charter ; and, as the embankment in question was made, for the purpose of restoring Cherry street to its former state, " or in a sufficient manner not to impair its usefulness," it must be considered as licensed, or authorized thereby.    The plaintiff, however, claimed, that, as no damages were appraised or paid to him therefor, under the charter, he was entitled to recover them, in this action.    And he further claimed, that he was entitled to recover, on the count in trespass, whether he proved any actual injury or damage, or not.

So far as this case is concerned, an examination of the latter clause of this proposition, has become wholly unnecessary ; because, the jury having found a substantial injury, to the extent of $3,000, for which they gave the plaintiff

damages, for the erection of this very embankment,—no other injury having been claimed by him,—it is obvious, that the claim did not apply at all to the case proved, and the defendants could not have suffered, by the ruling of the judge in its favor; and so they are not entitled to a new trial here, although the case might have been different, had there been a verdict for nominal damages merely. As the point, however, may frequently arise in cases of this sort, and is fairly raised upon this motion, we have determined to express our opinion upon it. Now, there is no doubt, that, for any wrongful invasion of another's property, some damage necessarily results; and the law does not require any distinct injury to be shown, in order to justify a recovery. It considers the infringement of the rights of a party, an injury, for which damages must be given; because upon no other principle can one's rights be protected. Every infringement of them must, to some extent, endanger the right itself, and a continuance of the infringement would, in time, deprive the party altogether of his right. If, therefore, the acts of the defendants had been committed upon property not covered by a highway, the plaintiff's claim would, without doubt, have been correct. He would have a right to protect his own exclusive possession of it; and for that purpose, must, of course, have the right absolutely to exclude all others from it; and, whether the acts were injurious to him or not, would not depend upon whether his property was injured, in a pecuniary point of view, no matter even if it was bettered and improved in value. Still, he would have the right to say, that his close was broken, and his possession infringed upon, and for such an invasion of his right, the law would give him damages. But in regard to the plaintiff's land, included in this highway—Cherry street,—he does not, we think, stand in such a relation to that, that he can treat the mere entry of the defendants upon it, as a breach of his close, and, therefore, an infringe-

ment of his right.  To have that effect, the entry must be unauthorized.

We do not deny or dispute the doctrine of the cases cited by the plaintiff, in support of his claim ; but we do not see that they apply to this case.  No doubt, he still owns .the fee of this land ; and the public, by establishing the highway, only acquired a right of way over it, with the incident right of repairing it in a reasonable manner.  Our own case of *Chatham* v. *Brainard,* and the cases on which it rests, decide that very fully ; and if here, as in the New York cases, the defendants had laid their railroad over this land, and had laid down their timbers and rails upon it, and had thus appropriated it to their own use, we do not deny that they would be liable for such an entry.  In such a case, the subjecting of the plaintiff's property to an additional servitude, is an infringement of his right to it, and is therefore an injury and damage to him.  It would be a taking of the property of the plaintiff, without first making compensation, which the defendants' charter does not authorize ; and we are not now about to say, that it would be legal or constitutional, if it did.  But, the acts complained of in this case, are precisely of the same character, as a portion of the defendants' acts in the case of *Bradley,* 21 Conn. R., 294, which we held not to constitute a taking, within the meaning of their charter, or of the constitution of the state.

To return, then, to the question on which this point turns : were the acts of the defendants authorized in the first place, by their charter ? and if so, then, were they, by the general law of the land, illegal, notwithstanding such authority ?

By the tenth section of their charter, it is provided, that " whenever, for the construction of their railroad, it shall become necessary to intersect or cross any stream of water, or water-course, or any road or highway, it shall be lawful for said company to construct said railroad across or upon the same, but the said company shall restore the said stream,

or water-course, or road or highway, thus intersected, to its former state, or in sufficient manner not to impair its usefulness." This section, it must .be admitted, in direct terms, authorizes the construction of the railroad across this street, and it throws upon the company, the burden of restoring the street to its former state, so far as not to impair its usefulness. To do that, the motion shows, that it was necessary to build the bridge, and guard the street so as to make the bridge accessible; otherwise, the usefulness of the street would have been destroyed.. The work was done, then, under the express authority of the legislature. Is there any restriction in the charter, in regard to the work, or any condition which must be performed before it is done? We discover none in regard to this work, if, in doing it, no one is injured. We have seen that, by it, the plaintiff's property was not taken. The defendants claimed no right to take, and did not profess to take it; they performed the work, as a burden thrown upon them, in consideration of their permission to build their road across Cherry street. That they built their railroad, for their own private purposes, can make no difference with this question. Suppose the legislature had incorporated a company, with power to erect a mill, to be supported by the toll taken from its customers, and had authorized the company, to cross highways, with their canal or ditch, provided they restore them to their former condition, the question would be the same as here. If they take property, it must be paid for; if they injure it, this charter provides that they must pay for that; but, if they neither take nor injure it, there is not, clearly, anything in this charter, that compels them to pay.

The question, then, resolves itself into a question of power in the legislature, to alter the grade, or authorize a corporation, or individuals, to alter the grade of a highway. But the legislature may construct and establish new highways, or it may delegate this power to subordinate bodies or corporations, as, to the county court, to towns and cities,

and to turnpike companies; and, for convenience, it is generally so done. But this does not divest the legislature of its power; and if it can directly, through its own immediate agents, make new highways, this general and greater power, of course, must include the lesser power to regulate, alter or repair them,—and this power is only limited by the constitutional provision, that compensation must be made for property taken for this object,—as it must also for any other public object. We agree with the defendants' counsel, therefore, that the ruling and charge of the court, on this point, was incorrect, inasmuch as it withdrew from the consideration of the jury, the question of the plaintiff's injury, and instructed them to find a verdict in his favor, whether he was injured or not; and, had the verdict been such as to show, that the defendants had been, or might have been, injured by the ruling, we should have felt bound to grant them a new trial.

We, however, have been unable to see, that the defendants could have suffered at all, from the ruling; and we have only examined the point, that it may be understood, that we do not sanction the ruling, as a correct exposition of the law. The defendants admit, as they must, that if the plaintiff has sustained any appreciable damage, he has a right to recover for that; and it is not denied, that it is proper for him to recover for it, on this count. It is not necessary or very material for us to decide, whether trespass or case would be the appropriate remedy, because the plaintiff has declared, as by our statute he may, in both forms, for this injury. Still we do not see, why trespass, with force, is not the proper remedy. We think it is; and that he can recover in that form, if he can recover at all. He owns the land, and, subject to the public easement, is in possession of it. The injury to it, by the defendant, is direct, by his entering upon it, and depositing materials there. So far as he is justified in this, in consequence of there being a highway there, he is not guilty of anything; but if he goes beyond his jus-

tification, then he is guilty of a direct trespass; his justification fails; and he is in the same condition, as if he had made the same entry, upon any separate inclosure of the plaintiff, not subject to any public easement. Hence, all the actions for such injuries have been trespass. *Chatham* v. *Brainard*, 11 Conn. R., 60.

A new trial is asked for, on the ground, that the damages given were excessive, and contrary to the weight of the evidence. It is said, that the jury must have disregarded the instruction of the court, "that in their estimate of damages, they should allow the defendants the local, personal, and particular advantage to the plaintiff's premises, occurring from the construction and use of the road." If it could be seen, that this was so, then undoubtedly the defendants would be entitled to a new trial, on that ground, unless, indeed, the instruction given was itself erroneous; but this is not claimed, and could not be. The rule of damages is given in the defendants' charter, and is a rational and just rule. When the damages are assessed, by freeholders appointed for this purpose, in the manner prescribed by the charter, they are to inquire into the extent of them, and they are to "assess just damages to the person or persons, whose real estate may be taken or injured." The language is substantially the same as is used, in regard to the laying out of highways, by selectmen or the county commissioners,—in which case, we believe the practice is, in the assessment of damages, to consider the local and peculiar benefit that the proprietor, whose land is taken, receives by the improvement, in respect to his lands not taken, but which are contiguous to the road; damages, thus assessed, are properly considered the only "just damages." If this would have been the rule, had the damages been assessed by freeholders, it seems to be the proper rule, in a case like this. Now, damages made up in this way, must of necessity be mere matter of opinion. The only precision there could be in the case, was, in regard to the expense the plaintiff

had been at, in raising his stores, so as to conform to the improved grade of the street. He had expended a considerable sum for that purpose, of which he was able to show the amount. But the injury to his buildings, caused by the necessity of raising them, and the peculiar benefit of the railroad to his property, to be taken from the estimated and actual injury, were of course, mere matters of opinion. The witnesses differed very much in regard to them. There was evidence, which went to show that the damages were not estimated high enough, and there was evidence, that went to show they were estimated much too high. It is not to be expected, on such a subject, that witnesses can agree. We probably should have estimated them less than were in fact given; but on such a subject, we think, as a general thing, the finding of the jury must be final; and we see nothing in this evidence, to induce us to believe, that the jury have acted corruptly, or disregarded, in any respect, the instruction of the court.

We therefore do not advise a new trial.

In this opinion the other judges concurred, except ELLSWORTH, J., who tried the cause in the court below, and was therefore disqualified.

New trial not to be granted.