The Borough of Norwalk vs. John W. Blanchard AND OTHERS.

Fairfield Co., March T., 1888. Park, C. J., Carpenter, Pardee, and Loomis, Js.

A committee authorized to assess past damages and future compensation for a stream taken by a borough for a water supply, admitted evidence on the part of the mill owner on the stream below, who claimed that his property was injured, as to the profits of his business at the mill during one of the years since the water was taken. Held that the productive capacity of the mill in the reduced state of the stream was a proper subject of inquiry, and that the evidence in question was admissible as tending to show it.

And held that the committee properly received evidence of the rental value of the property before the stream was reduced and its rental value since.

The opinion of a trier that his judgment was not affected by improper evidence which he received upon the hearing is not reliable and should not be received.

[Argued May 8th—decided September 21st, 1888.]

APPLICATION of the plaintiff borough and proceedings under it for the appointment of a committee to assess damages for the taking of water from a stream for the use of the borough; in the Superior Court in Fairfield County. Damages assessed in favor of the defendant, remonstrance of the borough against the acceptance of the committee's report, remonstrance overruled (*Beardsley, J.,*) and judgment ren-

dered for the defendants to recover the damages assessed. Appeal by the plaintiff. The case is fully stated in the opinion.

*J. B. Hurlbutt*, for the appellant.

*J. H. Light* and *S. Judson, Jr.*, for the appellees.

CARPENTER, J. An act of the legislature, passed in 1870, authorized the board of water commissioners for the borough of Norwalk to take the water of Silver Mine River for the purpose of supplying the borough with water. The water was taken in 1872. The defendants then were and now are the owners of property on the stream which has been and still continues to be damaged by the diversion of the water.

The act provides that "said borough shall be liable to pay all the damages that shall be sustained by any person, persons or corporation, by the taking of any land or estate as aforesaid, or by the construction or laying of any reservoirs, pipes, aqueducts, or other works for the purposes of this act. And if at any time it shall appear that any damage has occurred or may be likely to occur to any person, persons, or corporation, by reason of taking or using their land or estate for the purposes of this act, or in the construction of said water works, and the said board of commissioners cannot agree with the owner or owners of such property or privileges as to the amount of compensation or damages to be paid to them, then such compensation or damages may be assessed by three disinterested persons under oath, to be appointed by either judge of the Superior Court, on application to such judge by or on behalf of either party, &c." 6 Special Laws, p. 945.

By virtue of the authority thus conferred, the borough, in 1880, applied to a judge of the Superior Court for the appointment of appraisers to assess compensation and damages. Upon this application such proceedings were had that the compensation and damages were appraised and assessed by a committee, and the plaintiff remonstrated against

the acceptance of the report.  A judge of the Superior Court overruled the remonstrance and accepted the report.  The plaintiff appealed.

The remonstrance raised two questions of evidence:—

John W. Blanchard, one of the defendants, was permitted to testify, against the plaintiff's objection, that his business had been almost entirely destroyed by the taking of the water, and that in the year 1873 his profits from the privilege were about $4,000.  Another witness was permitted to testify that Mr. Blanchard's business was almost paralyzed by the erection of this dam, and that he should say that the business could not be carried on with the present water supply.  The reception of this evidence is claimed to be irregular and improper conduct.

For the purposes of this case we will assume that the reception of inadmissible evidence is, or may be, irregular and improper conduct within the meaning of the statute.  The question then is, was this evidence inadmissible?

The only portion of it which can be regarded as questionable is the evidence that the profits for the year 1873 were about $4,000.

It will be observed that the case involves two elements, past damages, and compensation for the future.

No question is made as to the constitutional power of the legislature to provide for the adjustment of damages previously sustained in this proceeding.  Both parties seem to have accepted this legislative tribunal in lieu of the regular courts.

On the question of past damages we are inclined to think the evidence was properly received.  The year 1873 was within the time for which damages were claimed.  To ascertain the damage done during that year naturally involves an inquiry as to the amount of business done and the profits resulting therefrom.  Possibly it was regarded by the committee as favorable to the plaintiff.  If the profits were so much after the diversion of the water, it may have had some tendency to reduce rather than enhance the damages.  If so, the plaintiff certainly has no cause of complaint.  But aside

from this, the productive capacity of the property for any portion of the time for which damages were to be ascertained, is a circumstance to be considered; not that it affords a rule of damages in itself, for the profits may have been exceptional—may have resulted from a favorable combination of other circumstances. When received, explained, and duly considered in connection with other circumstances, the trier can have no difficulty in giving it its true weight. The case does not show that the evidence was received or used for any purpose not strictly legitimate; and as within certain limits it was admissible, we must presume that it was confined to those limits, and therefore its reception was not irregular or improper.

The second ground of error, relating to the effect of the taking of the water upon the adjoining property, is not insisted on.

The third ground of remonstrance is, that the court erred in receiving evidence of the rental value of the defendant's factory, with full water power to run it, and the rental value with the water as found there in 1878.

The rental value of the property as it was before the diversion, and as it was afterwards, are clearly matters proper for the committee to consider. Before us there is really no contention to the contrary. The only question made in this part of the case, and this is not seriously urged but merely suggested, is, that the question asked of the witness, " What would be the rental value of such a factory with full water power to run it?" is not founded on any fact in the case ; that is, that it does not appear that there was a full supply of water to run it. We think the fair interpretation of the record is, that the question had reference to the ordinary flow of water before the diversion. So understood the question is unobjectionable.

Upon the trial of the remonstrance two of the committee were permitted to testify, against the plaintiff's objection, that the answers objected to and ruled in by the committee in the hearing before them, did not affect their judgment in the cause, that they were not considered by them in their

deliberations, etc. The reception of this evidence is assigned as one of the reasons of appeal.

The view we have taken of the other questions makes this unimportant, and it is not necessary to decide it. Nevertheless, as it has been discussed, and is a question likely to arise frequently in practice, we will briefly state our conclusion. In *Harris* v. *Woodstock*, 27 Conn., 567, such evidence was disregarded, although it was received by the Superior Court; and mainly on the ground· that it was unreliable. Evidence that is unreliable because of its relation to other testimony, or by reason of defective memory or other infirmity in the witness who gives it, is not on that account inadmissible ; but evidence which is in its nature unreliable, by whomsoever given, and under any circumstances, so that no fact may be safely found upon it, is unreliable·in such a sense that it ought not to be received. This is evidence of that character, and should have been excluded. But as this case does not depend upon that question, the error is immaterial, and is not a sufficient cause for reversing the judgment.

In this opinion the other judges concurred.