ALLEN E. VINCENT ET AL. vs. THE NEW YORK, NEW
HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In assessing damages to an adjoining proprietor for the temporary occu-
pation of the entire highway in front of his premises by a steam rail-
road company for its tracks and the movement of its trains thereon,
the circumstances under which the highway was appropriated to
railroad uses are an important consideration. If the use made of
the highway was authorized by the legislature, the rule of damages
would be different from that which would apply had the railroad
company been merely a forcible trespasser without color of right.
In the present case the acts complained of were authorized by the leg-
islature and were performed by the defendant in good faith and
with due care, while the damages which the plaintiff sought to
recover were such as could not have been ascertained with any
precision beforehand, upon condemnation proceedings. *Held:—*
1. That the failure of the defendant to have such an appraisal did not
subject it to a greater liability than it would have incurred had the
damages been assessed and paid before the street was taken.
2. That the rule of damage ordinarily applied in the case of a perma-
nent injury was the diminution in the market value of the property
caused thereby; but where, as in the present case, both the taking
and the injury were, and were understood to be, temporary only,
and the premises were used for business purposes, the damage for
which the plaintiff is entitled to compensation is the diminution in
the reasonable value of the use of the premises caused by such
temporary occupation of the highway.
3. That in determining the diminution of such value the trial court
should consider the reasonably necessary loss to the plaintiff in his
business caused by such interruption of access, including actual
loss of trade and loss of profits necessarily caused thereby, and
the reasonably necessary additional labor and expense required to
prevent further loss of that kind.
4. That the plaintiff was also entitled to compensation for such injuries
to his premises and goods—in addition to the damages above men-
tioned—as were caused by the acts of the defendant which the
plaintiff could not have avoided by the use of reasonable care and
forethought.
5. That certain items of damages—for extra teams and labor, and for
extra price paid for merchandise sold by the plaintiff—which ex-
ceeded the full value of his premises, could hardly be regarded as

a reasonably necessary expense, except upon the theory, adopted by the trial court, that the defendant was to be treated as a mere trespasser.

Whether it is within the power of the legislature to authorize a railroad company to take exclusive possession of a highway for a year or more, without prepaying the damages which would be caused thereby to adjoining proprietors, *quære.*

Argued November 3d—decided December 16th, 1904.

ACTION for damages for obstructing a highway by which the plaintiff, an abutting proprietor, was deprived of reasonable access to and use of his premises, brought to the Superior Court in Fairfield County and heard in damages by the court, *Thayer, J.,* after a default; facts found and judgment rendered for the plaintiff for substantial damages, and appeal by the defendant. *Error and new trial ordered.*

*Arthur M. Marsh,* for the appellant (defendant).

*Stiles Judson, Jr.,* for the appellees (plaintiffs).

HALL, J. The plaintiffs were the owners of land and buildings fronting on North Railroad Avenue, a highway in Bridgeport, upon which premises they conducted the business of selling, at wholesale, grain, groceries, meat and other merchandise. For the purpose of performing the work of removing the grade-crossings in the city of Bridgeport, under a Special Act of the General Assembly passed in 1895, and under the orders of the railroad commissioners, and under the provisions of the agreement between the railroad company and certain representatives of the city of Bridgeport, made by authority of said Special Act, the defendant closed North Railroad Avenue in front of and to the east and west of the plaintiffs' property, and built a fence along the north side of said street, which, in front of plaintiffs' store, was just inside of the curbstone, and occupied said closed portion of the street with materials and apparatus suitable for the work which it was performing, and placed thereon two railroad tracks upon which it operated its trains from about December 1st, 1899, until about April 1st, 1901.

The complaint describes both the direct damage to the property actually taken, by temporarily imposing the additional servitude of a steam railroad upon that part of the highway of which the plaintiffs owned the fee, subject to the public easement, and the consequential injury to the plaintiffs as owners of the property adjoining the highway by temporarily depriving them of access to it.

The plaintiffs filed a bill of particulars of their extra expense and damage on account of the obstruction of the highway by the railroad during said period, in which their total loss is stated to be $28,070.43.

The notice of defense upon the hearing in damages set forth the facts showing that the occupation of the highway and the use of the additional tracks were necessary acts in the performance of the work required by said resolution of the General Assembly and the agreement entered into under said Act and by the orders of the railroad commissioners.

The trial court found that the value of the plaintiffs' premises was $4,500, and that the rental value during the time the defendant so occupied the street, without reference to the particular use to which the premises were applied by the plaintiffs, was $50 a month, and assessed the plaintiffs' damages at $6,150.64, which was made up of these items :—

| | |
|---|---:|
| Cash paid to Lyon for access to Howard Avenue, | $ 450.94 |
| Carting materials for driveway, | 15.00 |
| Cash paid . . . for materials and labor, for change in building, | 150.00 |
| Cash for extra teams and help during interruption, | 2,316.98 |
| Damage to goods by surface water, | 971.94 |
| Extra price paid for beef and pork, | 2,232.28 |
| Rebuilding gutter destroyed, | 13.50 |
| | $6,150.64 |

In the memorandum of decision the trial judge states that this is not an action for the recovery merely of compensation for land taken for a public use, and that the damages are

not to be assessed according to the rule applicable to such taking, and that by suffering a default and giving notice under the statute the defendant has treated the action as one in the nature of trespass for a tort.

The rule of damages for injuries unlawfully inflicted by a mere trespasser is somewhat different from that which is applicable to injuries necessarily resulting from the proper performance of an act for the general good of the community. There are some inconveniences, and even losses, which individuals may justly be required to suffer, without specific compensation, for the public welfare, for which, when caused by the unlawful acts of a mere trespasser, damages should be recoverable. Whether the defendant is to be regarded as a forcible trespasser, in thus closing and occupying North Railroad Avenue and placing and using the steam railroad tracks laid upon it, or as engaged in the performance of a public duty imposed by the State, may therefore be an important question in the assessment of damages in this case. 2 Lewis on Eminent Domain (2d Ed.), § 493.

If the present suit is of the nature of the common-law action of trespass, it is because the allegations of the complaint show that by closing a highway in the city of Bridgeport in front of the plaintiffs' land, and laying and operating a railroad upon it, the defendant is liable for the alleged injuries to the plaintiffs' property. The complaint contains no express allegation of an unlawful, or wrongful, or forcible entry, as in the case of *McKeon* v. *New York, N. H. & H. R. Co.*, 75 Conn. 343, or in declarations under the common law, or under the Practice Act, for trespass upon land; nor is there any express averment that the defendant acted wrongfully, improperly or negligently, in so occupying the highway and performing said work, or that it wrongfully failed to have the damages to abutting property owners assessed and prepaid, or to do any other act required to enable it to lawfully occupy the highway temporarily in the prosecution of the public work. On the contrary, the averments of the complaint seem to be entirely consistent with the claim that under the Constitution of this State, as well as

under the defendant's charter, the plaintiffs are entitled to compensation for the alleged damages, although such occupation of the street was lawful, and although in all respects the defendant lawfully and properly performed the work in which it was engaged. It is therefore not clear how, by suffering a default, the defendant so admitted that it was a trespasser as to deprive it of the right of having the damages assessed in accordance with the rule applicable to the taking of land for a public use.

But if the complaint in effect charges the defendant with having unlawfully so closed and used the highway, the admission by the default did not prevent the defendant from disproving such allegation upon the hearing in damages, nor from alleging in its notice, and proving, facts showing that it was lawfully acting in obedience to a command of the State, and was therefore only liable for such damages as were required to be paid for lawfully taking private property for a public use. The facts showing in what capacity and by what authority and in what manner the defendant acted, were alleged in the notice and found by the court. These facts show that the defendant performed these acts " with due care, with entire honesty and sound discretion," and by authority of and in the manner required by an Act of the General Assembly; and that it cannot be regarded as a trespasser, unless it be for the reason that it does not appear that the defendant caused the plaintiffs' damages to be appraised and paid before the highway was thus occupied.

That the lawful and proper location and operation by the defendant of a steam railroad upon North Railroad Avenue in prosecuting, at the command of the State, the work of removing the grade-crossings in Bridgeport, was such a taking of land as rendered the defendant liable to abutting proprietors owning a fee in the highway, both for the injury to the land actually taken within the limits of the highway, and for the resulting injury to the owner of the land adjoining the highway not actually taken, but to and from which such abutting owners were thus deprived of access, was decided in the cases of *McKeon* v. *New York*,

*N. H. & H. R. Co.*, 75 Conn. 343, and *Knapp & Cowles Mfg. Co.* v. *New York, N. H. & H. R. Co.*, 76 id. 311. But the question in those cases was whether there was any liability at all upon the part of the defendant for such injuries under such circumstances, not what the proper measure of damages was, nor what the legal elements of the damage were for which they might be liable. In these cases, as in cases in other jurisdictions, one entering upon land for a public use without having compensated the owner for the injury to his property, is sometimes spoken of as a trespasser rather because he may be held liable in an action at law for the injury to property appropriated for a public use, than because he is to be regarded as a wrongdoer entering upon land without any right or authority whatsoever, and who may not render his occupancy lawful by afterwards compensating the owner for the injuries to his property to their full extent, or as one who is not entitled to have the compensation to be so paid limited to the sum which the law requires to be paid as compensation for injuries to property arising from a lawful taking of land for a public use. *Childs* v. *Newport*, 70 Vt. 62, 66 ; *Jones* v. *New Orleans & S. R. Co.*, 70 Ala. 227.

If the Act of 1895, and the agreement under it, both of which are given in full in the case of *Mooney* v. *Clark*, 69 Conn. 241, are valid, and the acts of the defendant were in accordance with the provisions of such Act and agreement, the defendant cannot be treated as a trespasser in any other sense than that it must compensate the owner of property lawfully taken or injured in the prosecution of a public work, and that such compensation may be recovered in an action at law in the nature of the common-law action of trespass or trespass on the case.

By the Act of 1895, and the agreement referred to, the duty and expense of removing the grade-crossings in Bridgeport were imposed by the State upon the defendant railroad company and the city of Bridgeport. Concerning that Act and agreement this court said, in *Mooney* v. *Clark*, 69 Conn. 241, 256 : " The legislature having determined that

the grade-crossings of the various streets in that city constitute a nuisance dangerous to life, has proceeded, in the way pointed out in the resolution and agreement, to compel the city and the railroad to become the owners of new highways and new railroads to accomplish that end, has determined who shall do the work and who shall pay the expenses, and is doing this through the instrumentality of the persons named in the resolution and the railroad commissioners. . . . This governmental act does not increase or diminish the assets of the city or of the railroad."

Manifestly, this duty was thus placed upon these two corporations because the powers, duties and liabilities granted and imposed upon them respectively by their charters concerning the construction and operation of railroads, and the opening, repairing and discontinuing of streets, and the payment of damages to persons whose property might thereby be taken or injured, rendered them the most suitable agencies for the performance of this work.  The charter of each corporation authorized it to take land for public purposes, made it liable to pay damages arising to persons whose property was so taken, and provided for the appraisal and prepayment of such damages.  In behalf of both these corporations the railroad company was required by the terms of the agreement to do the work of construction, grading of tracks and streets, etc., both upon its own land and upon the highways affected by the plans, and was given the full use of, and the right to temporarily close, such streets or portions of streets as might be necessary for the convenient prosecution of the work.

The Act of 1895 itself provides for the taking, by the railroad company or the city, of land or any interest therein deemed necessary for the carrying out of the work in any and all particulars, in the manner provided by statute for the taking of land for railroad purposes, and the provision in the agreement for the payment of the cost of the entire work expressly includes damage for the taking of land, and all damage to property resulting from a discontinuance of streets or parts of streets ; but neither the resolution nor

the agreement contain any express provision for the prepayment of the damages which might result to adjoining landowners from such temporary taking of a highway for railroad purposes as might be found necessary in the prosecution of said work.

It is evident that the real injuries complained of in this action are those resulting from depriving the plaintiffs of their right of access to the adjoining land (which to the extent that the street was a necessary and convenient means of access to his lot was as much a valuable property right as the lot itself. *Indiana, B. & W. Ry. Co.* v. *Eberle*, 110 Ind. 542, 546), rather than the injury to the land itself already dedicated and used as a highway, and along the south side of which the railroad, so temporarily moved into the highway, had been operated for many years.

Our Constitution does not expressly provide for the prepayment of the compensation for land taken for a public use. Whether under it the legislature may authorize the taking of land for a public use without the prepayment of compensation for the permanent consequential injuries arising therefrom to the owners of adjoining land, is a question which has been raised in several cases in this State, but not decided. *Hooker* v. *New Haven & N. Co.*, 15 Conn. 312, 326.; *Platt* v. *Milford*, 66 id. 320, 335 ; *Gilpin* v. *Ansonia*, 68 id. 72, 79. It is, however, held in the last case cited that the sum payable " for damages sustained by an owner of adjoining land by reason of a change of grade in the highway, does not represent compensation for the ' taking of property,' within the meaning of the Constitution." The provisions of the respective charters of the railroad company and the city, as to the appraisal and payment of damages before occupying land taken for a public use, are rather applicable to a permanent taking of or injury to property, or at least to a taking or injury the extent of which, and the amount to be paid as compensation for which, may be ascertained with a reasonable degree of certainty beforehand, than to some possible temporary taking in the prosecution of a public work, and possible temporary resulting injuries

to property not taken. The use by the defendant, from which the injuries resulted in the present case, was of a highway, was a temporary use, was of uncertain duration, and the extent and character of the injury which might result therefrom to the owners of property not taken, was therefore uncertain, and was such as is generally not required to be preappraised and prepaid. *Great Falls Mfg. Co.* v. *Garland*, 25 Fed. Rep. 521; *Orr* v. *Quimby*, 54 N. H. 590; *Denver & S. F. R. Co.* v. *Domke*, 11 Colo. 247; *Spencer* v. *Point Pleasant & O. R. Co.*, 23 W. Va. 406.

It is admitted in plaintiffs' brief that the damages they seek to recover are such that they could not have been ascertained and appraised beforehand upon condemnation proceedings. While the purposes of this case do not require us to hold that it was within the power of the legislature to authorize this work to be performed by these agents without prepaying that damage for which they were to be held liable, resulting from such temporary occupancy of highways by a railroad as might be found necessary in prosecuting the work, we are clearly of the opinion that such occupancy of North Railroad Avenue, without a preappraisal and payment of such damages, does not render the defendant such a forcible trespasser that it is to be subjected to any greater liability in damages in this action than it would have been had the damages been appraised and paid before the street was so occupied.

The rule of damages to be applied in this case is the same as that which would have governed in an appraisal of the damages in condemnation proceedings; just compensation for the injuries. *Nicholson* v. *New York & N. H. R. Co.*, 22 Conn. 74, 88; *Aldis* v. *Union Elevated R. Co.*, 203 Ill. 567; *Davenport, R. I. & N. W. Ry. Co.* v. *Sinnet*, 111 Ill. App. 75. That the trial court did not apply this rule, and that it considered the question of damages from a wrong standpoint and to the prejudice of the defendant's rights, appears from the language of the memorandum of decision and from the amount of damages awarded in comparison with the full value of the plaintiffs' entire property. Re-

garding the rule of damages when property is taken for a public use, it was said in *Platt* v. *Milford*, 66 Conn. 320, 332, which was an action by the owner of land adjoining a highway to recover special damages for a permanent injury to his property caused by a change of grade of the street: Such damage "includes the diminution in the market value of the land caused by the alteration, to be determined by considering everything by which that value is legitimately affected "; and that changes reasonably necessary to prevent or modify the reduction in the salable value of the property are properly considered in estimating the present immediate damage. In *Holley* v. *Torrington*, 63 Conn. 426, 433, which was an action of the same character as that last cited, the court said : " The special damages to the plaintiff's land could be determined only by considering everything by which its value would be affected." *Bradley* v. *New York & N. H. R. Co.*, 21 Conn. 294, was an action for damages for a permanent injury caused by the raising of an embankment as an approach to a bridge over defendant's railroad in a highway in front of plaintiff's land and blacksmith shop, and thereby interfering with his access to the street. The court said (p. 309) : " He (the plaintiff) does not complain that his property has been taken from him, or appropriated to the use of the defendants ; but that his enjoyment of it is materially and injuriously impaired by their acts. He retains his land, but its value is diminished by their acts." And in speaking of the damages which may be recovered (p. 311) : " We do not, however, intend to include merely fanciful or speculative damages, but only those of an actual, substantial, definite, and appreciable character." This case was cited as determining the liability of the railroad company in the case of *Burritt* v. *New Haven*, 42 Conn. 174, 195. *Nicholson* v. *New York & N. H. R. Co.*, 22 Conn. 74, was an action for damages for an injury of a similar character to that described in the *Bradley* case. In discussing the question of whether the damages awarded were excessive, the court said (p. 88) : " The rule of damages is given in the defendant's charter, and is a rational and just rule. When

the damages are assessed, by freeholders appointed for this purpose, in the manner prescribed by the charter, they are to inquire into the extent of them, and they are to 'assess just damages to the person or persons, whose real estate may be taken or injured'"; and further, that the rule which would have been the rule for the freeholders in making the assessment was the rule to be applied in that case.

These cases show that it is the purpose of the law that the owner of property adjoining a highway taken or occupied for a public use, shall receive just compensation, not only for his property actually taken or occupied in the highway, but also for the injuries, if any, to his property adjoining the highway, which are the natural and proximate consequences of such taking or occupation; and that the diminution in value of the property taken or injured, to be included in the damages, is to be determined by considering everything by which such value is legitimately affected.

The rule of damages applied in these cases, and in most of those cited by counsel, was the rule applicable to a taking or injury which is or may be permanent, and was applied in actions to recover either full compensation for such permanent injury, or compensation up to the time of the commencement of the action, for a continuing injury. For the injury to land in such cases, the diminution in market value is generally the rule of damages applied, because it is generally a fair measure of the loss sustained, whether the owner is compelled to abandon the injured property, or to use it in its impaired condition, or to restore it to its former condition.

In the present case both the taking and the injury were temporary, and it was understood they would be when the street was first closed, and the occupation of the highway and the injury occasioned thereby had ceased before suit was commenced; and, it may be added, the liability of the defendant is not limited to the payment of damages to realty, the language of its charter being that it shall "pay all damages that may arise to any person or persons," and that the damages to be assessed are "just damages to the person or

persons whose real estate shall be taken or injured." If the plaintiffs had used these premises merely as a place of residence or for the purpose of renting them, their loss as owners of property so used or rented would probably be fairly measured by the market rental value, or the diminution in such rental value, during the time they were so deprived of access. But where premises are used for manufacturing or business purposes and have been constructed for or adapted to such use, and for that purpose have been furnished with expensive fixtures, machinery and appliances, and a permanent and profitable business has been established at that place, compensation for the diminution in the market value of the premises, or in the mere rental value during the period of interrupted access, is not just compensation for the injury caused by temporarily depriving the owner of the right of access. When the owner is making such a use of the land, it is that use of which he is temporarily deprived, and for the loss of or injury to which he is entitled to compensation. *St. Louis, V. & T. H. R. Co.* v. *Capps*, 67 Ill. 607, 613; *St. Louis, J. & S. R. Co.* v. *Kirby*, 104 id. 345; *Sherwood* v. *St. Paul & C. Ry. Co.*, 21 Minn. 127; *Western Pennsylvania R. Co.* v. *Hill*, 56 Pa. St. 460. It would be unjust to the defendant to hold it liable for the diminution in market value of the premises after the street was closed, upon the theory that it was to remain permanently closed; it might be unjust to hold the defendant liable for the entire expense which might have been required in order to restore the right of access, after the street had been closed, so that the premises could be used as they had been before the interruption, since an attempt to do so might have been unreasonable under the circumstances and such expense might have equaled the full value of the premises which, at the end of the temporary interruption, were to be restored to the plaintiffs in their former unimpaired condition; it might be unjust to hold the defendant liable for the loss or expense incurred by the plaintiffs in continuing their business in the manner they did; and it might be equally unjust to allow the plaintiffs only the market rental value of the premises during the

period of the interrupted access, as compensation for the injury which they must necessarily have sustained either by suspending business entirely during that period, or by using the premises in their impaired condition as well as they could, or by moving their business to some other place. The law does not point out the particular course which the plaintiffs should have pursued, but it does require that their conduct should have been reasonable, both in protecting themselves from injury and in diminishing the loss for which the defendant might be liable. The reasonable value of the use of the premises to the plaintiffs, for the purposes of the business for which they were using them, is the value for the diminution of which, caused by such temporary interruption of access, the plaintiffs are entitled to compensation.

In determining the diminution of such value the court should consider the reasonably necessary loss to the plaintiffs in their said business, caused by such interruption of access, including actual loss of trade and loss of profits necessarily caused thereby, and the reasonably necessary additional labor and expense required to prevent further such loss. *Norwalk* v. *Blanchard*, 56 Conn. 461, 464; *Platt* v. *Milford*, 66 id. 320, 334; *Pittsburg, V. & C. Ry. Co.* v. *Vance*, 115 Pa. St. 326; *Driver* v. *Western Union R. Co.*, 32 Wis. 569. From the facts before us it is difficult to see how the items allowed by the trial court, of $2,316.98 " for extra teams and help," and $2,232.28 " extra price paid for beef and pork," exceeding in amount, as they do, the full value of the premises, can be regarded as reasonably necessary expenses, to such amount, for the purpose above stated. We assume they were allowed to that amount, upon the view taken by the trial court that the defendant was to be regarded as a mere trespasser.

In addition to the diminution in value of the use of the premises, the plaintiffs are entitled to compensation for such damages to their premises and to their goods, and necessary expense incurred in saving them from further damage, not included in the diminution in the value of the use of the premises, as may be proved to have been caused by the de-

fendant's acts, and which they could not have avoided by the use of reasonable care and forethought.

The view we have taken of this case renders a new trial necessary.

There is error and a new trial is granted.

In this opinion the other judges concurred.