## THE CRAFT REFRIGERATING MACHINE COMPANY *vs.* THE QUINNIPIAC BREWING COMPANY.

New Haven & Fairfield Cos., Oct. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, JS.

Under the Practice Act the plaintiff may state his grievance untrammeled by artificial forms of pleading and regardless of most of the ancient distinctions of procedure as to law or equity or contract and tort.

The "transaction," out of which different causes of action may arise which may be united in the complaint, must consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned and by which the legal relations of such persons between themselves are altered. The term applies equally to all grievances whether accomplished by violence, neglect, or breach of contract.

Therefore when the complaint, in a single count, set forth a cause of action for a breach of contract by the defendant in refusing to accept and pay for certain machines ordered by the plaintiff, and also a cause of action for a conversion by the defendant of the same machines in its refusal, after it had given notice of non-acceptance, to allow the plaintiff to remove them, it was held:—

1. That the facts set forth properly belonged to a narrative of the dealings between the parties, were necessary for the information of the court and constituted but a single "transaction" within the meaning of that term as used in the Practice Act.

2. The "separate and distinct" causes of action which, by Rule II, under the Practice Act, must be stated in separate counts, are such only as are separable by some distinct line of demarcation.

3. That the two causes of action were properly united in one count and presented no claims that could not be fitly and conveniently heard together.

4. That the trial court erred in requiring the plaintiff to elect, during the progress of the trial, whether to proceed under its claim for contract or under its claim for tort.

5. But that such order, while erroneous, was not void, as the court had jurisdiction of the parties and the subject matter, and it was therefore

incumbent upon the plaintiff to obey the order or abide the consequences.
6. That the court was justified in nonsuiting the plaintiff for its refusal to comply with such order.

[Argued October 25th—decided December 13th, 1893.]

ACTION to recover damages upon a complaint containing but one count sounding in contract and also in tort; brought to the Superior Court in New Haven County and tried to the jury before *George W. Wheeler, J.*

The complaint alleged a purchase by the defendant of the plaintiff of two refrigerating machines for the agreed price of $13,700, and their delivery by the plaintiff; that afterwards the defendant wrongfully claimed that said machines were not of the quality and capacity contracted for, and notified the plaintiff to take them away; that the plaintiff, thereupon, while claiming that it had fulfilled the terms of the contract, nevertheless agreed to take the machines back, if it could take them immediately; that it thereupon sent for them, but the defendant forcibly prevented their removal and continued to use the machines as its own property and converted them to its own use. The defendant filed a special answer and counterclaim alleging a breach of the contract on the part of the plaintiff to furnish machines of a specified capacity, and damages to the defendant resulting therefrom. Upon the second day of the trial and while the plaintiff was putting in its case the plaintiff's counsel asked a witness the following question: "What was the market price of these machines?" The defendant objected to this question upon the ground that there was no allegation in the complaint as to the reasonable value or market value of the machines; that the plaintiff had proceeded to introduce evidence of the contract, of its fulfillment upon its part and that the title to the machines was in the defendant; that a party may not in the same language say it has a cause of action arising from the fact that the title is in the plaintiff, and also a cause of action arising from the fact that the title to the property is not in the plaintiff but in the defendant, that the plaintiff had made its election by going forward

and introducing evidence to sustain its contract, and that the onus of dividing this so called double cause of action was not upon the defendant.

The plaintiff claimed that the complaint stated all the elements of a cause of action in tort and one of contract ; that the Practice Act merely requires the facts to be set out, as they were in the present complaint, and that even if those facts are combined in one count, if no preliminary objection is made, the plaintiff is entitled to proceed and recover on either theory.

The court ruled that the two causes of action could not be stated in one count, and that the plaintiff must elect upon which cause of action it would stand. The plaintiff declined to elect and the court rendered a judgment dismissing the complaint and allowing costs to the defendant. From this judgment the plaintiff appealed.

*Henry Stoddard* and *John W. Bristol*, for the appellant (plaintiff).

I. The complaint sets forth all the essential facts to constitute a cause of action for conversion. In such an action no allegation of value is necessary. (1 Swift's Digest, side p. 657, top p. 675.) And see forms 94 and 95 in the Practice Book, p. 66.

At all events the contract price had been proved, and such price, in the absence of all other testimony on this point, was *primâ facie* evidence of value. *Lehman* v. *Schmidt*, 87 Cal. 15 ; *Harlan* v. *Brown*, 30 No. East Rep. 928.

The court below should therefore have ordered us to amend to prevent a variance if any existed. Pract. Book, Rule III, sec. 6, p. 14 ; Rules Rev. 1891, p. 7, sec. 6.

If this however is not so, and the complaint contains only one cause of action sufficiently stated, then the court below manifestly erred in dismissing the complaint, for our right to go to the jury upon a sufficient cause of action alleged in the complaint and supported by evidence, making a *primâ facie* case, cannot be questioned or denied.

Assuming then that the complaint states a good cause of

action in contract and also one for conversion, they could properly be joined in two separate counts under sec. 7, subd. (7) of the Practice Act, which provides that several causes of action may be united in the same complaint when they are all brought to recover—

" (7) Upon claims *whether in contract or tort* arising out of the same transaction or transactions connected with the same subject of action."

In the case at bar both the causes of action arose out of the same transaction, to wit: the execution of the contracts to furnish and deliver the machines in question, or if they arose out of different transactions, those transactions were connected with the same subject of action, to wit: the machines themselves. Rules, Rev. 1891, p. 7, sec. 7.

The objection that the two causes of action are stated in one count would not, except for Rule IV, sec. 13, even be a ground for demurrer. Pomeroy's Remedies, § 447.

II. The defendant by not demurring for duplicity or misjoinder waives something. Practice Act, Rule IV, § 13. What is the nature and extent of this waiver?

If the defendant had demurred for duplicity and the demurrer had been sustained, the plaintiff would have been obliged to amend by stating the two causes of action in separate counts. If that had been done, and the defendant had demurred again for a misjoinder of counts, and its demurrer had been sustained, the plaintiff would then have been obliged to amend by striking out one of its counts; in other words it would then be obliged to elect upon which cause of action it would proceed. But in the case at bar the defendant did not demur, thereby waiving all objection for duplicity and misjoinder. The order of the court to elect, nevertheless, in effect brought about the same result as if there was no rule and no waiver.

In this state, before the enactment of the Practice Act, duplicity was a defect of form merely, and could only be taken advantage of by a special demurrer. *Seger* v. *Barkhamsted*, 22 Conn., 289, 295; *Havens* v. *H. & N. H. R. R.*

*Co.*, 26 id., 219, 224; *Havens* v. *H. & N. H. R. R. Co.*, 28 id., 86 ; *Taylor* v. *Knapp*, 25 id., 514.

In *Holly* v. *Brown*, 14 Conn., 255, 267, 268, the rule is thus stated : " And even where distinct causes of action are embraced in the same count, provided they be such that the same species of remedy is appropriate to them all, although it may constitute duplicity in pleading and in that respect be objectionable, *yet if the defendant does not take advantage of the objection by special demurrer, he waives the objection and must be prepared to meet all the charges; and if the plaintiff substantiates any of them, he will be entitled to recover.*" *Havens* v. *H. & N. H. R. R. Co.*, 26 Conn., 220 ; *Oviatt* v. *Pond*, 29 id., 479, 485 ; *Church* v. *Meeker*, 34 id., 421, 422 ; *Andrews* v. *Thayer*, 40 id., 156, 158.

The law in respect to this question has not been changed by the Practice Act, Rule IV, § 13. *Sprague* v. *Taylor*, 58 Conn., 542; *Bassett* v. *Shares*, 63 id., 39, 42; *Blossom* v. *Barrell*, 37 N. Y. 434, 436 ; *Van Loan* v. *Willis*, 13 Daly, 231 ; *Commercial Bank* v. *Pfeiffer*, 22 Hun, 336; *Scott* v. *R. R. Co.*, 68 Iowa, 560; *Conyers* v. *R. R. Co.*, 78 id., 410.

The New York code provides as to joinder of causes of action, " *that they must be consistent.*" Code Civil Procedure, § 484. No such provision exists in our Practice Act. The New York and also the Wisconsin cases on this subject are criticised in Bliss on Code Pleading, §§ 290, 291, 292, 293 and notes.

The courts in California and Kentucky take a different view. Thus in *Mills* v. *Barnett*, 22 Cal., 240, the plaintiff set up in his complaint two causes of action ; first, that he had paid certain money by mistake, and second, that the defendant had warranted the genuineness of the indorsement of the note for which the money in question had been paid. No preliminary objection was taken to the complaint, and the court held that the complaint was sufficient. In its opinion the court says :

" Either would constitute a good cause of action, and it does not make the complaint insufficient because they have two grounds of recovery instead of one." See also *Jones* v.

*Steamship Cortez,* 17 Cal., 487 ; *Noel* v. *Hudson,* 13 B. Monroe (Ky.), 204.

In New York the cases are by no means in harmony. Thus in *Whitbeck* v. *Kehr,* 10 Daly, 403, 405, it was held that:

" When the facts stated in the complaint may constitute a cause of action for conversion or contract, but are alleged as a single cause of action only, and no motion is made before the trial to have the two causes of action stated separately, the court should not on the trial compel the plaintiff to elect."

If the plaintiff had submitted to the ruling of the court below, and made its election, the result might show by the verdict of the jury that it had elected wrongly. The plaintiff might have lost its case, although it had another cause of action which was good and just, but it could not take advantage of it, for the reason that it would be bound conclusively by its election. *Turner* v. *Davis,* 48 Conn., 400 , *Whitside* v. *Brawley,* 152 Mass., 133; 135 ; *Connihan* v. *Thompson,* 111 id., 270 ; *Butler* v. *Hildreth,* 50 Metc. 49; *Moller* v. *Tuska,* 87 N. Y., 166.

III. The court had no power to make the order in question. The rule giving the Superior Court power to grant nonsuits and defaults upon noncompliance with an order does not rest in the court as an arbitrary and uncontrolled power in this respect. The rule must mean that the power to nonsuit or default is granted only in case when the order is a *proper and lawful* order, for otherwise the court might order a plaintiff or defendant to pay the adverse party a certain sum of money, without a trial, and if he refused so to do might order a nonsuit or default, as the case might be, but such a result would be abhorrent to the first principles of justice. It would encourage and foster incalculable evils, and in its operation necessarily tend to debase the administration of the law.

In *Schoonmaker* v. *Albertson & Douglass Mach. Co.,* 51 Conn., 387, it was held that the refusal of the court below

to open a judgment by default might be reviewed when the refusal was based on an erroneous application of the law.

The same rule ought to be applied to judgments of the kind here in question.

IV. If, however, the court below had power under the circumstances of this case to make in its discretion the order in question, which we deny, we say that it did not exercise a sound discretion in the matter. The complaint certainly stated a good cause of action of some kind. We claim that we had already proved a *primâ facie* case upon which we had the right to go to the jury. The court ought, therefore, to have construed the complaint if it was ambiguous, or if necessary, ordered us to amend, and submitted the case to the jury on the complaint as interpreted or as amended. It did neither. It took the case away from the jury and dismissed the complaint. Such a course could not be productive of any good result. It was harsh, oppressive and arbitrary.

*William C. Case* and *William H. Ely*, with whom was *Edmund Zacher*, for the appellee (defendant).

It is not clear how the ruling of the court, that an action founded on a tort could not be joined with an action founded on contract in one count has injured the plaintiff, for the ruling was not obeyed. Assuming for the time, however, that the plaintiff has a right to have the question of pleading and evidence reviewed by this court, we submit that the ruling of the court was correct.

I. The plaintiff's claims were inconsistent in that it claimed that the machines belonged to the defendant, and therefore the plaintiff was entitled to recover, and also claimed that the machines belonged to the plaintiff, and therefore it was entitled to recover.

"It is an elementary principle that a plaintiff shall not claim by inconsistent remedies or in inconsistent rights." *Pott's Appeal*, 5 Pa. St., 502. "Precedent has established the wholesome principle that distinct remedies cannot be used concurrently or alternately unless they are consistent, not only in purpose but in kind." Ib., p. 503. This rule

is recognized and enforced in *Stewart* v. *Huntington*, 124 N. Y., 127; *Barndt* v. *Frederick*, 78 Wis., 1; *Plummer* v. *Mold*, 22 Minn., 15; *Moller* v. *Tuska*, 87 N. Y., 166–9. The right of the pleader to set out the facts on which he relies, given him by the Practice Act, does not affect this question. The question here is whether he has a right to be inconsistent in his claims. *Turner* v. *Davis*, 48 Conn., 397–400; *Clapp* v. *Cawpbell*, 124 Mass., 50. Clearly the defendant was entitled to an order compelling the plaintiff to elect.

II. The court certainly had the discretionary power to pass this order even if the defendant was not entitled to it and the plaintiff has no reason to complain. *Plummer* v. *Mold*, 22 Minn., 15; *Hawley* v. *Wilkinson*, 18 id., 525; *Rhodes* v. *Pray*, 36 id., 393.

III. The plaintiff by its course had already elected to claim under the contract, and having made the election could not claim under the tort.

Having claimed that a certain course of action on the part of the defendant affirmed the contract, and having announced that it should treat the contract as affirmed, with full knowledge of all the facts, the plaintiff could not afterwards rescind it. "It was bound by its affirmation." *Bulkley* v. *Morgan*, 46 Conn., 393–395; *Dinsmore* v. *Duncan*, 57 N. Y., 580.

The court would have been justified in going even further than it did, and had it refused to hear any testimony to sustain the claim of conversion the ruling should have been sustained.

IV. But the plaintiff is not in a position to have this question reviewed, for it asks this court to sustain it in disobedience, by saying that the court below erred. If the ruling was erroneous plaintiff had its remedy, and any wrong it suffered on account of the ruling would have been remedied. It was its first duty to obey and to seek the remedy provided by law, and not to defy the court below and ask this court to sustain it in its defiance.

The rules of the court provide: "If a party fails to comply with an order or rule he will be nonsuited or defaulted."

Rules of Court, Rule 5, p. 28. The ruling and order were passed, the plaintiff failed to comply, and because of his failure was nonsuited. Under the rule the Superior Court had no alternative.

BALDWIN, J. Complaints under the Practice Act are to "contain a statement of the facts constituting the cause of action." General Statutes, § 872. This is to be "a plain and concise statement of the material facts on which the pleader relies." General Statutes, § 880. "Acts and contracts may be stated according to their legal effect," (Practice Book, p. 14, Rule III, sec. 1,) and "the plaintiff may claim alternative relief, based upon an alternative construction of his cause of action." (Id., p. 13, Rule II, § 9.) Several causes of action may be united in the same complaint, if all are "upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action; "but they must be separately stated," and "if it appear to the court that they cannot all be conveniently heard together, the court may order separate trials of any such causes of action, or may direct that any one or more of them be expunged from the complaint." General Statutes, § 878. "Transactions connected with the same subject of action may include any transactions which grow out of the subject-matter in regard to which the controversy has arisen; as, for instance, the failure of a bailee to use the goods bailed for the purpose agreed, and also an injury to them by his fault or neglect." Practice Book, p. 15, Rule III, § 7. Where separate and distinct causes of action (as distinguished from separate and distinct claims for relief, founded on the same cause of action or transaction,) are joined, "the complaint is to be divided into separate counts." Practice Book, p. 12, Rule II, § 4. Any exception for misjoinder of causes of action, whether in the same or separate counts, must be taken by demurrer, and if not so taken will be deemed to be waived. Practice Book, p. 17, Rule IV, § 13.

These various statutory provisions and rules of court are

all designed to enable the plaintiff to state his grievance to the court, untrammeled by artificial forms of pleading, and regardless of most of the ancient distinctions of procedure as to law and equity, or contract and tort. There is no attempt to bring the parties to issue upon some "single, certain and material point." Each paragraph of the complaint is to contain "as nearly as may be a separate allegation," (General Statutes, § 880), and it is declared that "the denial of any material allegation shall constitute an issue of fact." Practice Book, p. 17, Rule IV, § 12. If, in any case, so many of these issues are formed that the court fears the jury cannot properly dispose of all at one hearing, it "may order that one or more of the issues joined be tried before the others." General Statutes, § 1032. And if the issues made up by the parties are indefinite or indecisive, the court may direct them " to prepare other issues, and such issues shall, if the parties differ, be settled by the court." General Statutes, § 880.

The plaintiff's complaint sets forth two causes of action, stating them in separate paragraphs, but not in separate counts. One cause of action is for breach of a contract to take and pay for two refrigerating machines at an agreed price. The other cause of action is for a conversion of the machines. It was proper to join these different causes of action in one complaint, either if both arose out of the same transaction, or if, while one arose out of one transaction and the other out of another, both these transactions were "connected with the same subject of action."

This notion of completed action strongly characterizes the word in the Latin language, from which through the Normans we have derived it, although we gain little assistance otherwise from these sources in determining its meaning, since both the Romans and the French have used it mainly as a juridical term to signify an agreement of parties in settlement of differences. Dig. II., 15, *de transactionibus*, Civil Code of France, art. 2044.

As the word is employed in American codes of pleading and in our own Practice Act, a transaction is something

which has taken place whereby a cause of action has arisen. It must therefore consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered.

The transaction between the parties to the present action began when they made the contract for the manufacture and sale of the two machines. Then followed the delivery of the machines, the refusal to accept them, the attempt of the plaintiff to retake them, the forcible prevention of their removal and the subsequent continuance of their use in the defendant's business. Without taking each and all of these events into consideration, the legal relations of the parties could not be fully determined. From the delivery of the machines to the commencement of the action, they had remained continuously in the defendant's possession. It had simply dealt with them in a different way at different times.

The Practice Act is to be "favorably and liberally construed as a remedial statute." Practice Book, p. 21, Rule IX, § 4. It has taken the word "transaction," not out of any legal vocabulary of technical terms, but from the common speech of men. So far as we are aware it has never been the subject of any exact judicial definition. It is therefore to be construed as men commonly understand it, when applied, as in our Practice Act it certainly is applied, (General Statutes, § 878,) to any dealings between the parties resulting in wrongs, without regard to whether the wrong be done by violence, neglect, or breach of contract. It seems to us hardly to be doubted that any ordinary man would consider everything stated in the complaint as properly belonging to a narrative of the whole transaction between the parties, and necessary for the information of one who was to form a judgment as to their respective rights.

That a broader meaning should be given to the term "transaction" than it has received in some of the courts of our sister states, is plain from the provision in the Practice Book, (p. 13, Rule II., § 7,) that "where several torts

are committed simultaneously against the plaintiff (as a battery accompanied by slanderous words) they may be joined as causes of action arising out of the same transaction, notwithstanding they may belong to different classes of actions." This was the deliberate adoption of a view of the meaning of the word in question which had been previously disapproved in New York, as well as by Judge BLISS in his treatise on Code Pleading (§ 125), though accepted in Kansas. *Anderson* v. *Hill*, 53 Barb., 238, 245; *Harris* v. *Avery*, 5 Kans., 146.

It follows that both the causes of action declared on were properly united in one complaint. The same result would also be reached if what we have viewed as one transaction could be regarded as consisting of several transactions, since such would all be connected with the same subject of action, that is, the two machines and the title to them.

The plaintiff had a right to declare in separate counts. *Bassett* v. *Shares*, 63 Conn., 39, 41; Practice Book, p. 37, Form 30. We think, however, that it had an equal right to use but one. While two causes of action were set up as the basis of its right to damages, there was really but one on which a recovery was claimed. The plaintiff was not seeking to be paid twice for its machines. If they conformed to the contract, or if, though not conformable to it, the defendant, after full opportunity for examination, had finally accepted them under the contract, it was liable for the contract price. If the defendant on the other hand, had rightfully refused to accept them under the contract, and the plaintiff had acquiesced in such refusal, but had been forcibly prevented from taking them back, and the defendant had afterwards used them as its own, it would be liable for their value as on a conversion.

The measure of the damages would differ according to the true construction of the plaintiff's cause of action. It had a right to present claims for "alternative relief, based upon an alternative construction" of this cause of the action. Separate counts are required for separate and distinct causes of action, but not for the presentation of separate and distinct

claims for relief founded on the same cause of action or transaction. Practice Book, p. 12, Rule II., § 4.

This rule does not require separate counts in all cases where the plaintiff declares on several causes of action, but only where these are separate and distinct from each other. In one sense every cause of action must be separate and distinct from any other, but evidently this cannot be the sense in which these terms of description are employed in the rules under the Practice Act, for it would make them mere surplusage in this connection. Separate and distinct causes of action, within the meaning of this rule, must be such as are both separable from each other, and separable by some distinct line of demarcation. In Form 91 of the Practice Book (p. 65), there is alleged in a single count the breach of a contract to print a book from stereotype plates furnished by the plaintiff, and also a conversion of the plates. This form is referred to in the index to the Practice Book (p. 278),— an index carefully prepared by the commission which framed the Practice Act, and afterwards, by request of the judges, the rules to carry it into effect,—as a complaint for a conversion " as part of an entire transaction." Had the wrong done by the breach of contract which occurred at an earlier stage of the transaction thus declared on been regarded as " separate and distinct " from the wrong done by the conversion which ended the transaction, two counts would have been necessary.

To separate and distinguish the two causes of action set up in the complaint before us would be no easy task. In substance they amounted rather to separate and distinct claims for relief founded on the same transaction. In Form 15 of the Practice Book (p. 30) is found a complaint in a single count against two defendants, setting up a contract made by one as the agent of the other, and the denial by the latter of the existence of any agency. Relief in damages is sought against one or the other in the alternative. Here, obviously, are different causes of action. Not only are they several because each is against a different defendant, but one sounds in contract and the other in tort, since the only rem-

edy in this jurisdiction against one who contracts as an agent without authority from the supposed principal, is by an action for the wrong done by his false assumption of authority. *Johnson* v. *Smith,* 21 Conn., 627, 634. Yet the Practice Book, here again, as in Form 91, does not treat them as "separate and distinct," within the meaning of Rule II.

Our laws formerly cast on the plaintiff the duty of construing his rights with respect to the form in which they ought to be brought before the court, and the relief to which he might be entitled, at the risk of losing everything if he mistook his remedy. The Practice Act enables him, in a case like the present, to throw this duty of construction upon the court. It is enough for him to tell his story as plainly and concisely as may be, and to state the different kinds of relief, one of which he thinks he may fairly claim. The court will then apply the law to the facts alleged and proved, and award such relief as the case may call for.

The plaintiff in the case at the bar, upon the facts stated in its complaint, might well doubt whether it was entitled to the contract price or the market value of the machines; that is, whether its recovery should be made to rest on a breach of contract or a conversion,—on the defendant's refusal to pay for its own property, or its wrongful appropriation of the plaintiff's property. To determine this question it was necessary to consider the whole of the transaction alleged. Without this it could not be certain that justice between the parties would be done. The connection between the defendant's notice that the machines were not accepted and its forcible resistance to their removal, was so close that the plaintiff's story would have been but half told, had mention of either been omitted. The substantial question in dispute was whether the defendant had so ordered and dealt with the machines that it was bound to pay for them. Whether the liability rested on a contract or a tort, was matter of form, except as it might affect the assessment of damages; and if the plaintiff was entitled to judgment, the interest of both parties would be promoted by having the amount of

recovery ascertained by the proper rule, at the same hearing in which the right of recovery was established.

The defendant refers to *Turner* v. *Davis*, 48 Conn., 397, 400, as affirming it to be a rule of pleading that a plaintiff can never " occupy at one and the same time, with reference to the same subject-matter, and for the accomplishment of the same object, two positions utterly inconsistent with each other." The question in that case was whether the mortgagee of a reversion who, after accepting an attornment from the tenant and giving him a lease, had sought and obtained a foreclosure and judgment of ejectment against the mortgagor, on a complaint alleging that he was in possession, could then change his position and maintain summary process against the tenant on the lease he had himself executed. This depended on the effect of a judgment by way of estoppel. The remarks quoted from the opinion of the court were pertinent to the case before it, where the plaintiff's rights had been fixed by a previous election. They have no application to the interpretation of the Practice Act in relation to the joinder of causes of action, between which no election has been previously made.

It is the rule in some states that inconsistent claims cannot be set up in the same complaint, nor inconsistent defenses in the same answer; but a different policy has been adopted here. Practice Book, p. 11, Rule I, § 3; p. 13, Rule II, § 9; Forms 15, 16, 389.

The plaintiff's complaint, therefore, was in proper form, and in our opinion it set up no claims that could not be properly and conveniently heard together.

It follows that the trial court erred in requiring the plaintiff, during the progress of the trial, to elect between proceeding under its claim for breach of contract or under its claim for a tort. The order, however, while erroneous, was not void.

The court had power to direct that one or the other of these claims should be expunged from the complaint, and to make the selection for this purpose itself. General Statutes, § 878. By the action taken the power and duty of selection,

instead of being exercised by the court, were cast upon the plaintiff. The court had jurisdiction over the parties and the cause. It was its duty to see that the issues were so framed and tried as not to embarrass the jury by any confusion of questions which could only be satisfactorily disposed of when separately presented. The right to require an election, within proper limits, and at the proper time, between different causes of action combined in a single proceeding, is one generally incident to courts of justice. *State* v. *Tuller*, 34 Conn., 280, 299. The error of the trial court was therefore committed in the exercise of its legitimate jurisdiction, and it was incumbent upon the plaintiff to obey the order or abide the consequences.

Full warning was given by the court that a refusal to elect would be deemed sufficient ground for a dismissal of the suit. The General Statutes, § 999, direct that " if the plaintiff shall refuse to obey the order of the court in pleading he shall be nonsuited," and the general rules of practice (58 Conn., 577, Rule V), expressly provide that " if a party fails to comply with an order or rule he will be nonsuited or defaulted." It is not for him to refuse obedience to such an order because he deems it erroneous or because it is erroneous. Until revoked or reversed it is the law of the case. He can take his exception, but such exception will not suspend the course of justice. The order will still remain in force, and must be obeyed or the suit dismissed, if the authority of the court, and the dignity of the state which it represents, are to be maintained.

It is urged by the plaintiff that, had it made the election required, and then failed to recover a verdict, it could never have sued again on the cause of action which had not been submitted to the jury. But the order of the court was made simply to facilitate the disposition of the case on trial. Its effect was limited by its object. An election forced upon a plaintiff under such circumstances would be simply an election for the purpose of the trial, and his selection of one out of two causes of action arising out of the same transaction would no more have extinguished that not chosen than if it

had arisen out of a totally different transaction. As to one cause of action only would the plaintiff have had his day in court. The other would stand as if wholly unheard; and as to both, if the order were erroneous and a proper exception taken before making the election, a new trial could be had on the original complaint.

The only exception taken by the plaintiff at the trial of this action in the court below was to the order dismissing the complaint; but, as another suit may be hereafter brought, we have thought it better to express our views fully as to the question of pleading and practice which had previously arisen, and which would be not unlikely to recur in any subsequent proceedings between the parties.

There is no error in the judgment appealed from.

In this opinion ANDREWS, C. J., and FENN, J., concurred; CARPENTER and TORRANCE, Js., dissented.

CARPENTER, J. (dissenting). We all agree that the court erred in requiring the plaintiff to elect whether to claim a judgment on a contract or in tort. The result is that, for disobeying an erroneous order, the plaintiff has been nonsuited. In correcting that error ought not the plaintiff to be restored to its former position in court? The answer is that the order, although erroneous, was the law of the case until reversed, and should have been obeyed. But is that strictly true? If the order was not within the jurisdiction of the court, how could it be the law of the case? And was the plaintiff bound to obey it? I suppose the plaintiff had a right to state the facts constituting his cause of action, and call upon the court to render the appropriate judgment. What power then had the court to order the plaintiff to decide in advance what the appropriate judgment was, and elect to claim that judgment only?

Suppose the plaintiff has two separate causes of action stated in different counts; has the court the power to compel him to strike out one of the counts and to claim a judg·

ment only on the other? The case before us and the one supposed seem to me to depend upon the same principle.

If my brother TORRANCE is right, and I am inclined to think he is, that there is no statute or rule of court authorizing a nonsuit in such a case, then unless it is within the general powers of the court, the punishment was unauthorized, and the judgment of nonsuit should have been reversed on that ground.

TORRANCE, J. (dissenting). In this case the majority of the court hold that the trial court erred in requiring the plaintiff to elect between two causes of action stated in his complaint. In that conclusion I fully concur.

They further hold that the complaint was rightfully dismissed. In that conclusion I do not concur.

This last conclusion seems to be based upon two propositions: first, that the order to elect though erroneous was " the law of the case " until revoked or reversed, and therefore should have been obeyed; second, that the trial court had the power to dismiss the complaint for noncompliance with the order. I grant the first proposition but I deny the second. That the trial court had ample power in some way to enforce this order, I concede; whether it had the power to dismiss the complaint for refusal to obey is the only point in dispute. It unquestionably had power to hear and finally determine the cause. Did it also have the power to refuse to hear and determine for noncompliance with its ruling? In other words, did it have power to render the particular judgment of which the plaintiff complains? Unless it had, then its judgment of dismissal was certainly erroneous, and perhaps void, notwithstanding the fact that it had jurisdiction over the parties, the subject-matter and the cause. *Windsor* v. *McVeigh*, 93 U. S. 274.

The power to compel a party to submit to a nonsuit or a default, and to dismiss a complaint, for mere noncompliance with some rule of practice or procedure, or some order made incidentally in a particular case, is certainly a very important one. In this state where such power exists it has, so far as

I am aware, invariably been conferred specifically by some
statute or general rule of practice made in pursuance of
law; and when thus conferred the law or rule conferring
the power has uniformly prescribed the particular circum-
stances under which it might be exercised. This power has
been conferred as occasion seemed to demand from a very
early period. Thus, in the Revised Statutes, 1808, such
power appears to have been conferred as follows: In 1667,
to nonsuit for want of appearance, p. 34; in 1709, to render
judgment against a defendant for failing "to make his plea
or join issue," p. 551; in 1713, to default for nonappearance
of defendant, p. 33; in 1754, to nonsuit for failure to give
bond to prosecute, p. 39; and in 1734, to nonsuit in an
action for usury for refusing to be examined on oath when
required, p. 679. In 1852, power to nonsuit was specially
given for failure to make out a *primâ facie* case; Public
Acts, 1852, chap. 4; in 1871, to nonsuit in a flowage case
on failure to pay costs and expenses when ordered, § 1225,
General Statutes, 1888; in 1878, to nonsuit on failure to
give a "new bond" in replevin, § 1329; in 1883, to nonsuit
on failure to give a "new indorser" in an action on a pro-
bate bond, § 899; and in 1889, to nonsuit or default on fail-
ure to disclose. Public Acts, 1889, chap. 22.

This power has also in a very few instances been conferred
by the general rules of practice made by the judges pursu-
ant to law, as may be seen by reference to such rules hitherto
or now in force. There are doubtless other instances where
the power in question has been thus specially conferred, but
the above are I think sufficient to show that in this state the
Superior Court has not been deemed to possess such power
unless it was thus specially conferred. Indeed, the power to
confer it even in this way has been questioned or doubted by
the bench and the profession in some instances. See *Hoyt
v. Brooks*, 10 Conn., 190, and *Naugatuck R. R. Co.* v. *Water-
bury Button Co.*, 24 id., 468. The right and the power how-
ever to confer it in this way is no longer open to question.
I know of no instance where the power in question has been
exercised in this state unless it has been thus specially con-

ferred by statute or rule of practice; and I feel warranted therefore in assuming that unless it is so conferred it does not exist.

In the present case the power of the court to dismiss the complaint is claimed under rule V. of the General Rules of Practice adopted in 1890, and found in the 58th volume of our reports, and under § 999 of the Revision of 1888. Unless thus conferred the power, I think, does not exist. Let us examine these two sources. The rule reads as follows:—"If a party fails to comply with an order or rule, he will be nonsuited or defaulted, and upon motion to set aside such nonsuit or default the court may grant the motion upon compliance with such terms as the court may impose." Under this rule the question is whether the ruling or order to elect in the present case was "an order or rule" within the meaning of Rule V. The words "order or rule," standing alone as in Rule V, are ambiguous; they may mean a general rule or order of practice or procedure, or some particular order or ruling made between parties in a given cause. To ascertain which of these meanings is the one intended we must apply the ordinary rules of interpretation. These words are practically synonyms, and are freely used as such in the dictionaries and in common speech. They are so used in law also. Black on Judgments, vol. 1, pp. 5, 6. I think they are used synonymously in Rule V, and must mean either a general rule made by the judges pursuant to law, or a special incidental order or ruling, made by the court in the trial of a cause. If the latter, then every "ruling" made in a cause is a "rule or order" within the meaning of Rule V; for the dictionaries define a "ruling" as a "decision or rule" of a judge or court.

If this be the correct interpretation of Rule V, then a party may be nonsuited for noncompliance with, or disobedience of, any such ruling, and thus may be put out of court against his will for a great many causes besides those specifically provided for by statute or general rule. This certainly works a very great and radical change in our practice in this respect; for, prior to 1890 as we have seen, this power was

always conferred specifically in given cases under clearly defined circumstances, that usually left no room for doubt or dispute; and whether given by statute or by general rule, it was given quite sparingly and only in cases where it was deemed advisable to confer it. But under the claim now made, it is given generally and without apparent limitation, and of course may be used in cases where there may be great doubt as to whether the ruling is or is not erroneous.

I cannot believe that in adopting Rule V the judges intended to depart so widely and so radically from the former practice. It may well be doubted whether they had the power to provide by general rule sanctions of this kind for every special ruling or order made in a cause. They are expressly empowered to make general rules, and this by necessary implication gives the power to provide sanctions for these rules; but the power to provide sanctions for every special ruling is a very different matter, and is not given I think either expressly or by implication. But if we assume that they had the power, I think they have not exercised it. Had they intended to depart so widely from the former practice as is now claimed, they would have expressed themselves to that effect more clearly than they have in Rule V. There existed in 1890 no good reason why they should confer the power to nonsuit or default in this general way; for the Superior Court as a court of general jurisdiction already possessed ample power to enforce its special orders and rulings by methods quite as efficient as those pointed out in Rule V. Besides this it already possessed the power to nonsuit or default in all special cases where the legislature or the judges had deemed it advisable to confer it. Under these circumstances, I do not think the judges intended to confer it in all cases without limitation, and thus render superfluous the statutes by which it was specially conferred; especially when there existed no good reasons for so doing. For these reasons I think the rule invoked does not confer the power in question.

The power to dismiss is also based upon § 999 of the General Statutes. The difficulty here is that even under

the most liberal construction of the statute the order in question does not fairly fall within it.

The object of the statute is to compel the parties to "make their pleas and join issue." If the plaintiff fails to do this according to the order of the court he shall be nonsuited; if the defendant so fails judgment may be rendered against him as upon *nihil dicit*. The end of the statute is attained when the parties have "made their pleas and joined issue." The court cannot use the power thus conferred for any other purpose. In the case at bar the pleadings were closed; the defendant under § 13 of Rule IV of the Practice Book had waived any exception for misjoinder; and the trial was in progress. Under these circumstances the plaintiff having offered evidence of a breach of contract, then offered evidence to prove a tort; thereupon the defendant claimed that the plaintiff could not proceed for both causes of action and that it had already elected to proceed for breach of contract. The court held that the plaintiff had not made its election but ordered it to do so. This was not an "order of the court in pleading" within the statute.

If in a criminal case like that of *State* v. *Bates*, 10 Conn., 372, the court orders the prosecutor to confine himself to the act concerning which evidence has first been given; or if the prosecutor charging two distinct and separate felonies in one information, is ordered to elect, these can hardly with propriety be called orders of the court relating to the pleadings in such cases. Or if under § 1032 of the General Statutes the court orders one or more of the issues joined to be tried before the other, such order can hardly be called an "order of the court in pleading" within § 999.

The truth is the court made no "order in pleading." The pleadings were not to be changed at all, but were to remain precisely as the parties had made them. The power to dismiss a cause in this way ought not to be exercised except in cases where it is clearly conferred; and even in such cases it ought to be exercised sparingly, for such a power is "not the daily bread but the strong medicine" of the law.

For these reasons I think the judgment of the court below was either erroneous or void.