[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CORRECTED MEMORANDUM OF DECISION ON DEFENDANT FIORES' MOTION TO STRIKE
In this case, the minor plaintiffs Justin and Nathaniel Rivera, through their mother as prochein ami, seek to recover damages due to their exposure to lead-based paint while residing at two separate properties located in Hartford, Connecticut. The plaintiffs filed a revised complaint dated May 15, 1997. The first through sixth counts are directed against Vincent and Lucy Ingenito ["Ingenitos"], the owners of record and landlords of 468 Franklin Avenue, where it is alleged that the minor plaintiffs resided from approximately November 1, 1995 to the present. The seventh through eighteenth counts are directed against Edward and Anna Fiore ["Fiores"], the owners of record and landlords of 68 Standish Street, where it is alleged plaintiffs resided from January 1, 1993, to November 1, 1995.
The Fiores filed a motion to strike, dated June 4, 1997. The principal ground of the motion is that the plaintiffs have misjoined their claims against the Ingenitos with the claims against the Fiores, requiring the entire complaint to be stricken. In the alternative, the Fiores challenge the legal sufficiency of the seventh and thirteenth counts alleging negligence per se, the ninth and fifteenth counts alleging nuisance, the tenth and sixteenth counts alleging breach of warranty of habitability, and the eleventh and seventeenth counts alleging recklessness.
I. Misjoinder
The Fiores argue that the entire complaint should be stricken CT Page 8785 because the claims against them are improperly joined with those against the Ingenitos. A motion to strike is the proper way to raise this claim. Practice Book §§ 152, 198.
The parties agree that the Fiores' claim of misjoinder is governed by the provisions of Practice Book § 133. Practice Book § 133 is premised on the language of General Statutes § 52-97 and both provide, in pertinent part, that "[i]f several causes of action are united in the same complaint, they shall all be brought to recover, either . . . upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action." "Transactions connected with the same subject of action within the meaning of subdivision (7) of Sec. 133, may include any transactions which grew out of the subject matter in regard to which the controversy has arisen . . . ." Practice Book § 134. These provisions are liberally construed. See Goggins v.Fawcett, 145 Conn. 709, 710, 147 A.2d 187 (1958); CraftRefrigerating Machine Co. v. Quinnipiac Brewing Co.,63 Conn. 551, 561, 29 A. 76 (1893).
Different causes of action are properly joined in one complaint "if both arose out of the same transaction, or if, while one arose out of one transaction and the other out of another, both these transactions were `connected with the same subject of action.'" Craft Refrigerating Machine Co. v.Quinnipiac Brewing Co., supra, 63 Conn. at 560. The purpose of joinder is to "enable parties to settle all their controversies in a single action." Veits v. Hartford, 134 Conn. 428, 436,58 A.2d 389 (1948). "The dominant idea is to permit joinder of causes of action . . . where there is some substantial unity . . . ." Ripley v. Rodgers, 213 S.C. 541, 50 S.E.2d 575,576 (1948), cited in Goggins v. Fawcett, supra, 145 Conn. at 711.
The Fiores maintain that each period of residency alleged in the complaint constitutes a separate and distinct transaction. The plaintiffs contend that even if the claims arise out of separate transactions, "successive and . . . cumulative lead poisonings of a single individual" may still be joined in the same complaint because they are connected with the same subject matter. They also argue that for policy reasons the court should permit joinder of claims against successive landlords in cases alleging exposure to lead-based paint. The plaintiffs' policy arguments are persuasive. CT Page 8786
Historically, the Connecticut courts have taken a liberal view of the joinder statute and rules. In a case decided only a few years after the 1879 enactment of the predecessor to §52-97, where the owner of a cemetery sought to enlarge it by taking several pieces of land owned by different persons who objected to being joined as defendants, the Supreme Court deemed the joinder appropriate, stating:
 we think that it is in harmony with our practice . . . and with the spirit of the Practice Act, and that it promotes speedy, complete, and inexpensive justice, without placing any obstruction in the way of any defendant in protecting his rights. Each carries his own burden only; he is not made to carry that of any of his associates. Therefore the complaint, so far forth as this objection is concerned, is sufficient.
Evergreen Cemetery Association v. Beecher, 53 Conn. 551, 552,5 A. 353 (1886). Similarly, permissive joinder of closely related cross claims and counterclaims is allowed because it serves the common-sense purposes of "judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action . . . ." Jackson v.Conland, 171 Conn. 161, 167, 368 A.2d 3 (1976).
Thus, in deciding whether to permit or deny joinder, the court should consider the interests of judicial economy. The plaintiffs aptly point out that "if successive lead exposures are not allowed to be joined . . . it will greatly increase the number of lawsuits where injurious lead exposure is alleged."[1] Moreover, it can reasonably be anticipated that prior or subsequent landlords will be cited into these cases for apportionment purposes, see General Statutes §§ 52-102b,52-572h, as negligence is typically alleged as a ground for recovery. Indeed, in any civil case in which a claim for damages from lead paint exposure is made, the plaintiffs are required to disclose a list of the minor's prior and subsequent residences within 14 days of the filing of the defendant's appearance. In re: Lead Paint Litigation, LPL Case Management Order No. 1, ¶ IV.1.(a).[2] The mandatory limited disclosure provisions contained in ¶ IV were specifically requested by numerous representatives of the defense bar to assist in identifying apportionment defendants. In cases where there has been successive exposure to lead-based paint, it would be unduly burdensome to the effective administration of justice to require CT Page 8787 the filing, and subsequent separate trial, of individual cases against each landlord, with the prior or subsequent landlords added for apportionment purposes only.
Additionally, as the plaintiffs have pointed out, separate cases involving an individual's successive lead exposures are likely candidates for consolidation, on the court's own motion, pursuant to Practice Book § 84A. Separate trials of these actions would involve a substantial duplication of effort on the part of the plaintiff and the court. For example, separate trials would require the plaintiff's medical expert, as well as any other necessary expert witnesses, to testify more than once about essentially the same subject matter. Moreover, any potential confusion arising from the presence of more than one landlord defendant in a case can easily be remedied through the court's instructions to the jury.
There appears to be no prejudice to the Fiores in being joined for trial with the Ingenitos. As the Supreme Court stated in Broderick v. Mcguire, 119 Conn. 83, 105, 174 A. 314 (1934): "To compel the plaintiff to bring a separate suit against each of these defendants would not be in the public interest, because of the heavy burden it would put upon the courts and their officers." Accordingly, the motion to strike on the ground of misjoinder is denied.
II. Negligence per se
The Fiores claim that the seventh and thirteenth counts are legally insufficient because they only allege violations of statutes and the statutes do not provide an independent basis for a separate cause of action. This court has previously rejected similar arguments and sustained the legal sufficiency of similar counts. See Martinez v. Maturna, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 473382 (March 17, 1997, Lager, J.); Lovick v. Nigro, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 543473 (Feb. 21, 1997, Lager, J.); Sanchez v. General UrbanCorp., Superior Court, judicial district of New Haven, Docket No. 378774 (Feb. 6, 1997, Lager, J.). The court will not revisit its prior rulings. The motion to strike the seventh and thirteenth counts is denied.
III. Nuisance
CT Page 8788
The Fiores have moved to strike the ninth and fifteenth counts sounding in nuisance. The plaintiffs have conceded that the court has previously stricken identical claims. See Lovick v.Nigro, supra; Sanchez v. General Urban Corp., supra. Accordingly, the motion to strike the ninth and fifteenth counts is granted.
IV. Warranty of Habitability
The Fiores have moved to strike the tenth and sixteenth counts, arguing that damages for personal injuries are not recoverable under a theory of breach of implied warranty of habitability. This court has previously concluded otherwise.Lovick v. Nigro, supra. Accordingly, the motion to strike the tenth and sixteenth counts is denied.
V. Recklessness
The Fiores have moved to strike the eleventh and seventeenth counts claiming that the plaintiffs have simply added the words "willful, wanton and/or reckless disregard" to the factual allegations supporting the negligence counts. "The mere use of the words `reckless' and `wanton' is insufficient to raise an actionable claim of reckless and wanton misconduct. Kostiuk v.Queally, 159 Conn. 91, 94, 267 A.2d 452 (1970). To be legally sufficient, a count based on reckless and wanton misconduct must, like an action in negligence, allege some duty running from the defendant to the plaintiff." Sherman v. Lafayette Bank TrustCo., 4 Conn. App. 39, 46, 492 A.2d 219 (1985).
The eleventh count incorporates paragraphs one through six of the seventh count and the seventeenth count likewise incoporates paragraph one through six of the thirteenth count. The essence of those allegations is that the minor plaintiffs were exposed to lead because hazardous levels of lead paint existed before and during their occupancy of the Standish Street property from January 1, 1993 to November 1, 1995. In the eleventh and seventeenth counts, it is further alleged that the defendants received actual notice, on October 16, 1995, that the property contained lead paint hazards from municipal officials (¶ 7) and then did not take any steps to put the premises into habitable condition (¶ 8). The plaintiffs maintain that the additional facts alleged in paragraphs seven and eight are sufficient to state an actionable claim of recklessness and distinguish these counts from the negligence counts, which allege constructive notice only. CT Page 8789
While a failure to act under certain circumstances can constitute recklessness for some purposes, see Tessman v. TigerLee Construction Co., 228 Conn. 42, 54-55, 634 A.2d 870
(1993);[3] under established premises liability law, before a landlord can be held liable, even in negligence, for personal injury resulting from a hazardous condition of which he had actual notice, he must have had a reasonable opportunity to remedy the defective condition after notice. See Gore v. People's Savings Bank,235 Conn. 360, 374, 383-85, 665 A.2d 1341 (1991); Stevens v. Yale,101 Conn. 683, 691, 127 A. 283 (1925). What constitutes a reasonable length of time to remedy a defective condition is generally determined by the circumstances of the case. Pollack v. Gampel,163 Conn. 462, 469-70, 313 A.2d 73 (1972). However, in cases involving the existence of hazardous and defective lead-based paint conditions, the statutory and regulatory scheme defines the landlord's time-frame to commence remediation. See General Statutes §19a-111c; Regulations of Connecticut State Agencies, § 19a-111-1, et. seq.
Under § 19a-111-5,[4] the applicable regulation, the Fiores had a minimum of forty-five working days from notification to initiate a lead abatement, if the minor plaintiffs had elevated blood lead levels at the time.[5] The complaint alleges that the plaintiffs moved out of the Fiores' property, and into the property owned by the Ingenitos, on or about November 1, 1995, which was only fifteen calendar days after notification of the inspection results. Thus, any failure to act on the part of the Fiores during this time period cannot amount to recklessness because they were under no duty to act. Recklessness, like negligence, "cannot be predicated upon the failure to perform an act which the actor was under no duty or obligation to perform." Behlman v. Universal Travel Agency Inc.,4 Conn. App. 688, 691, 496 A.2d 962 (1985). Moreover, even if the Fiores had some arguable duty to the plaintiffs during this time under the regulations, to submit a lead abatement plan for example, that duty was extinguished when the plaintiffs moved out.
The existence of a duty is always a question of law for the court. See e.g., Jaworski v. Kiernan, 241 Conn. 399, 404, ___ A.2d ___ (1997); Gordon v. Bridgeport Housing Authority,208 Conn. 161, 171, 544 A.2d 1185 (1988). In this case, the allegations of the eleventh and seventeenth counts are insufficient as a matter of law to establish any liability for CT Page 8790 recklessness on part of the Fiores because the plaintiffs did not remain on the premises long enough for liability to attach after notice. See Dubay v. Irish, 207 Conn. 518, 534, n. 10,542 A.2d 711 (1988). Accordingly, the eleventh and seventeenth counts must be stricken.
VI. Conclusion
For the reasons stated above, the motion to strike the entire complaint on the ground of misjoinder is denied. The motion to strike the seventh, tenth, thirteenth and sixteenth counts is denied. The motion to strike the ninth, eleventh, fifteenth and seventeenth counts is granted.
LINDA K. LAGER, JUDGE