[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant's motion to strike raises two issues. The first issue is whether an action for breach of the implied covenant of good faith and fair dealing and an action under the Connecticut Unfair Trade Practices Act (CUTPA) based on a violation of the Connecticut Unfair Insurance Practices Act (CUIPA), arising out of a failure to pay an uninsured motorist claim, may be asserted before the underlying uninsured motorist action has been reduced to judgment. The second issue is whether an action for breach of the implied covenant of good faith and fair dealing and an action under the CUTPA for a violation of CUIPA are properly joined with the action for uninsured motorist benefits.
The plaintiffs, Bounhom Khanthavong and Vongsoak Sinrath, have brought this action seeking uninsured motorist benefits. In the same complaint the plaintiffs have joined an action for breach of the implied covenant of good faith and fair dealing and a CUTPA action; General Statutes § 42-110a et seq.; for alleged violations of CUIPA, General Statutes § 38a-815 et seq.[1] The defendant has moved to strike those counts which do not claim uninsured motorist benefits for the reasons that they are misjoined and may not be asserted until the underlying uninsured motorist action is resolved.[2]
CT Page 7476
In the first count, the plaintiff Khanthavong alleges that on October 13, 1994, at approximately 5:30 a.m., he was the owner and operator of a motor vehicle which was proceeding westerly on North Avenue in Bridgeport when it was rearended by an unidentified vehicle driven by an unidentified operator. The collision, alleges Khanthavong, was the negligence of the unidentified operator. As a result of the negligence of the unidentified operator, Khanthavong claims that he was sustained the following injuries, some or all of which may be permanent: "a. hyperextension cervical spine; b. hyperextension thoracic spine; c. contusion to the knee; d. headaches; e. bruises and contusions; and f. mental anxiety and nervousness." Khanthavong states that at the time of the collision he was insured by the defendant Allstate Insurance Company under a contract of insurance and that pursuant to the uninsured motorist provisions of that policy he is entitled to recover full damages.
In the second count, the plaintiff Sinrath alleges the same operative facts as does the plaintiff Khanthavong. Sinrath alleges in the second count that as a result of the collision, he sustained the following injuries, some or all of which may be permanent: "a. hyperextension cervical spine; b. hyperextension lumbar spine; c. hyperextension thoracic spine; d. bruises and contusions; and mental anxiety and nervousness."
In the third count the plaintiff Khanthavong alleges that his attorneys made demand upon the defendant and that "[t]he value of this case exceeds the policy limits." Khanthavong claims that the defendant "despite numerous phone calls and requests has not made any offers to settle this matter." He alleges that the defendant's "intentional refusal to negotiate this case of clear liability and serious injury and subsequent deception and misleading activities constitutes an unfair insurance practice in violation of Connecticut General Statutes § 38a-816(6) as follows: a) fail[ing] to acknowledge and act with reasonable promptness upon communication with respect to claims arising under insurance policies; b) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; c) refusing to pay claims without conducting a reasonable investigation based upon all available information; and d) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." The plaintiff Khanthavong claims that the defendant "has committed and/or performed with such frequency the above unethical and unscrupulous business practices as indicated in general business practice and pattern." He states that this is a violation CT Page 7477 of CUTPA.
In the fourth count, the plaintiff Khanthavong repeats the allegations of the third count and adds that "the Defendant's intentional refusal to negotiate this case of clear liability and serious injury and subsequent deception and misleading activities" constitutes a breach of the covenant of good faith and fair dealing. Khanthavong claims that by its actions, the defendant has caused him emotional distress.
The fifth and sixth counts are asserted by the plaintiff Sinrath and basically parallel Khanthavong's allegations in the third and fourth counts. Sinrath also alleges that as a result of the collision, he "has been left with a 5% permanent partial disability of the lumbar spine and a 6% permanent partial disability of the whole person. The Plaintiff has incurred medical expenses of approximately $2,000.00."
The defendant's first claim is that the plaintiffs' claims for breach of the covenant of good faith and for CUIPA/CUTPA violations are improperly joined with the plaintiffs' claims for uninsured motorist benefits.
Practice Book § 133, which governs claims of improper joinder provides: "In any civil action the plaintiff may include in his complaint both legal and equitable rights and causes of action, and demand both legal and equitable remedies; but, if several causes of action are united in the same complaint, they shall all be brought to recover, either (1) upon contract, express or implied, or (2) for injuries, with or without force, to person and property, or either, including a conversion of property to the defendant's use, or (3) for injuries to character, or (4) upon claims to recover real property, with or without damages for the withholding thereof, and the rents and profits of the same, or (5) upon claims to recover personal property specifically, with or without damages for the withholding thereof, or (6) claims arising by virtue of a contract or by operation of law in favor of or against a party in some representative or fiduciary capacity, or (7) upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject of action. The several causes of action so united shall all belong to one of these classes, and, except in an action for the foreclosure of a mortgage or lien, shall affect all the parties to the action, and not require different places of trial, and shall be separately stated; and, in any case in which several causes of action are CT Page 7478 joined in the same complaint, or as matter of counterclaim or setoff in the answer, if it appears to the court that they cannot all be conveniently heard together, the court may order a separate trial of any such cause of action or may direct that any one or more of them be deleted from the complaint or answer."[3]
The plaintiffs' claims are not within the ambit of subpart 1 of § 133 ("upon contract, express or implied"). It is true that an uninsured motorist claim is contractual in nature. Harlach v.Metropolitan Property Liability Ins. Co., 221 Conn. 185, 190,602 A.2d 1007 (1992). So too, this court recently has held that an action for breach of the covenant of good faith and fair dealing is essentially contractual in nature. Arm Development Ltd. v. People'sBank, Superior Court, Judicial District of Fairfield, No. 294102 (1996). However, an action under the Connecticut Unfair Trade Practices Act for violations of the Connecticut Unfair Insurance Practices Act is a statutory cause of action. Lees v. MiddlesexInsurance Co., 219 Conn. 644, 649, 594 A.2d 952 (1991) ("CUIPA and CUTPA claims . . . are not actions `on this policy' but are independent statutory tort actions"); see also Black v. Goodwin,Loomis and Brittin, Inc., 239 Conn. 144, 149, ___ A.2d ___ (1996);Associated Investment Co. Ltd. Partnership v. Williams AssociatesIV, 230 Conn. 148, 154-155, 645 A.2d 505 (1994).
The plaintiffs' claims are not within the scope of subsection 2 of § 133 ("for injuries, with or without force, to person and property, or either, including a conversion of property to the defendant's use"). Although there is little case law interpreting this provision, it is not to be read "as encompassing any claim for damages to the pocketbook" since to do so "would render the remainder of the rule extraneous. . . ." Teris v. Dawson, 173 Conn. 206,209-210, 377 A.2d 288 (1977). Rather, the phraseology of Practice Book § 133(2) irresistibly suggests that it is referable to the old common law distinction between trespass and trespass on the case which the Practice Act had otherwise abolished. Tuohey v.Martinjak, 119 Conn. 500, 502, 177 A. 721 (1935). "At common law, `[t]respass was the remedy for all forcible, direct and immediate injuries, whether to person or to property — or in other words, for the kind of conduct likely to lead to a breach of the peace by provoking immediate retaliation. Trespass on the case . . . [was] designed to afford a remedy for obviously wrongful conduct resulting in injuries which were not forcible or not direct.' W. Prosser W. Keeton, Torts (5th Ed. 1984) § 6, p. 29." Ford v. BlueCross Blue Shield of Connecticut, Inc., 216 Conn. 40, 52 n. 2,578 A.2d 1054 (1990). Even if the court were to look behind the CT Page 7479 contractual nature of an uninsured motorist action to the underlying motor vehicle accident claim which arises from negligence — the contemporary descendant of the action for trespass of the case; Gentile v. Altermatt, 169 Conn. 267, 284,363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S.Ct. 763,46 L.Ed.2d 631 (1976); — it would be inconsistent with the admonition in Teris v. Dawson, supra, to hold that a CUIPA/CUTPA claim is an action "for injuries, with or without force, to person and property, or either. . . ." This is so not because such claims are statutory; see Ford v. Blue Cross Blue Shield of Connecticut,Inc., supra; but because the relevant section of CUIPA, which requires that the unfair insurance practices proscribed be "committ[ed] or perform[ed] with such frequency as to indicate a general business practice"; General Statutes § 38a-816(6); is essentially a statute committed to the administration of an administrative official; General statutes § 38a-817; and because CUTPA is essentially equitable in nature. "CUTPA creates an essentially equitable cause of action not substantially similar to common law claims triable to a jury prior to 1818. . . ."Associated Investment Ltd Partnership. v. Williams Associates IV,
supra, 230 Conn. 155. An action for trespass was an action at law.Mitchell v. Southern New England Telephone Co., 92 Conn. 633, 635,103 A. 754 (1918); Kelly v. Waterbury, 82 Conn. 255, 257, 73 A. 136
(1909); Vincent v. New York, N. H. H.R. Co., 77 Conn. 431, 436,59 A. 491 (1904).
Subpart three of § 133 is inapplicable because none of the plaintiffs' claims are "for injuries to character". Subparts four and five also are inapplicable because none of the plaintiffs' claims are "to recover real property" or "to recover personal property specifically. . . ." Subpart six is inapplicable because the plaintiffs are not asserting "claims arising by virtue of a contract or by operation of law in favor of or against a party insome representative or fiduciary capacity. . . ." (Emphasis added.)
This brings us to subpart seven of Practice Book § 133 which allows the joinder of causes of action to recover "upon claims, whether in contract or tort or both, arising out of the same transaction or transactions connected with the same subject matter." As discussed supra, an action for uninsured motorist benefits and an action for breach of the covenant of good faith and fair dealing are both actions in contract. A CUIPA/CUTPA action is an independent statutory action. Thus, all three actions may be included in the same complaint if they arise out of the same transaction or transactions connected with the same subject matter. CT Page 7480
In Craft Refrigerating Machine Co. v. Quinnipiac Brewing Co.,63 Conn. 551, 560-561, 29 A. 76 (1893), the Supreme Court held that the term "transaction" was essentially synonymous with "cause of action". Said the court: "a transaction is something which has taken place whereby a cause of action has arisen. It must therefore consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered." Id., 561. But the causes of action joined in one complaint need not arise out of the same transaction so long as they "were `connected with the same subject of action.'" Id., 560. In Craft Refrigerating, which has since been repeatedly cited with approval, the court explained:
 The plaintiff's complaint sets forth two causes of action, stating them in separate paragraphs, but not separate counts. One cause of action is for breach of contract to take and pay for two refrigerating machines at an agreed price. The other cause of action is for a conversion of the machines. It was proper to join these different causes of action in one complaint, either if both arose out of the same transaction or if, while one arose out of one transaction and the other out of another, both these transaction were "connected with the same subject of action."
 The transaction between the parties to the present action began when they made the contract for the manufacture and sale of the two machines. Then followed the delivery of the machines, the refusal to accept them, the attempt of the plaintiff to retake them, the forcible prevention of their removal and the subsequent continuance of their use in the defendant's business. Without taking each and all of these events into consideration, the legal relations of the parties could not be fully determined. From the delivery of the machines to the commencement of the action, they had remained continuously in the defendant's possession. It had simply dealt with them in a different way at different times.
(Emphasis added.) Id., 560-561. The rules regarding the joinder of claims are to be liberally construed. Id., 561; accord, Goggins v.Fawcett, 145 Conn. 709, 710, 147 A.2d 187 (1958); Springfield-DewittCT Page 7481Gardens, Inc. v. Wood, 143 Conn. 708, 714, 125 A.2d 488 (1956).
The issue before this court also is informed by CraftRefrigerating and by Practice Book § 134, which provides in pertinent part: "Transactions connected with the same subject ofaction within the meaning of subdivision (7) of Sec. 133, mayinclude any transactions which grew out of the subject matter inregard to which the controversy has arisen; as, for instance, the failure of a bailee to use the goods bailed for the purpose agreed, also an injury to them by fault or neglect; the breach of a covenant for quiet enjoyment by the entry of the lessor, also a trespass to goods, committed in the course of the entry. . . ."
(Emphasis added.)
Here, there are three causes of action by each of the two plaintiffs. "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." (Internal quotation marks omitted.) Barrett v. Danbury Hospital, 232 Conn. 242,263-264, 654 A.2d 748 (1995); see Veits v. Hartford, 134 Conn. 428,434, 58 A.2d 389 (1948). The first cause of action is an action on the insurance policy for uninsured motorist benefits. The second cause of action, which involves additional facts, is also on the policy, for breach of the implied covenant of good faith and fair dealing. The third cause of action, which also involves additional facts, is the CUIPA/CUTPA claim. All three causes of action are "connected with the same subject of action"; Practice Book § 133(7); to wit, the plaintiffs' claims for underinsured motorist benefits on the policy. The latter two causes of action "grew out of the subject matter in regard to which the controversy has arisen. . . ." Practice Book § 134. The plaintiffs' claims are not improperly joined.
 II
The other ground of the defendant's motion to strike is that the plaintiffs may not pursue their causes of action for breach of the covenant of good faith and fair dealing and for violating CUIPA/CUTPA until the defendant's liability for uninsured motorist benefits has been determined.
This court has observed that "[t]he jurisdictions are divided as to whether, for policy reasons, a claim for breach of the covenant of good faith and fair dealing may be joined with an CT Page 7482 action for uninsured motorist benefits. See 3 No-Fault and Uninsured Motorist Automobile Insurance § 29.40[4]. In fact, there is no unanimity as to whether a claim for bad faith may arise in connection with an uninsured motorist claim. 2 Widiss, Uninsured and Underinsured [Underinsured] Motorist Insurance (2d Ed.) § 20.1 et seq.; see also Shernoff, Gage Levine, Insurance Bad Faith Litigation (Matthew Bender) § 4.03[3]." Kenny v. Nationwide MutualInsurance Company, Superior Court, Judicial District of Fairfield, No. 328574 (1996).
A rule precluding insurer liability for bad faith where the issue of liability has not been resolved is appropriate in those states where an insured is required to secure a judgment against the uninsured motorist before being entitled to uninsured motorist benefits. Widiss, op. cit. § 20.4; see, e.g., Blanchard v. StateFarm Mutual Automobile Insurance Co., 575 So.2d 1289 (Fla. 1991);Wallis v. Cotton States Mutual Insurance Co., 182 Ga. App. 147,354 S.E.2d 842 (1987); Quick v. State Farm Mutual Automobile InsuranceCo., 429 So.2d 1033 (Ala. 1983).
In Connecticut, there is no requirement that a claimant who seeks uninsured motorist benefits must first obtain a judgment against the tortfeasor. General Statutes § 38a-336(a)(1) provides in relevant part that "[e]ach automobile liability policy shall provide . . . uninsured an underinsured motorist coverage . . . for the protection of persons insured thereunder who are legallyentitled to recover damages from owners or operators of uninsured motor vehicles or underinsured motor vehicles. . . ." (Emphasis added.) To establish legal entitlement "the plaintiff must prove: (1) that the other motorist was uninsured; (2) that the other motorist was legally liable under the prevailing law; and (3) the amount of liability." Williams v. State Farm Mutual AutomobileInsurance Co., 229 Conn. 359, 368, 641 A.2d 783 (1994). While in many cases legal liability may have to be determined by a judge or jury, our practice permits a party to assert a claim which is contingent on the disposition of another claim. Such claims typically are in the nature of indemnification, apportionment or contribution, to set aside a fraudulent conveyance, and to reclaim assets of an estate necessary for the payment of a debt from those to whom the assets have been wrongfully distributed. Veits v.Hartford, supra, 134 Conn. 432-33; cf. Practice Book § 117.[4]
However, there is no existing reason in our substantive or procedural law that would require a victim of a breach of a contractual covenant of good faith and fair dealing or a CUTPA/CUIPA violation, after establishing an underlying breach of CT Page 7483 contract following years of litigation, to institute a new law suit and be delayed additional years to be made whole. "[T]he general policy of our law `. . . favors as far as possible the litigation of related controversies in one action.' Preston v. Preston,102 Conn. 96, 122, 128 A. 292 [1925]." Veits v. Hartford, 134 Conn. 428,436, 58 A.2d 389 (1948). This court holds that the plaintiffs' claims for bad faith and for CUIPA/CUTPA violations are not legally insufficient because the defendant has not yet been adjudicated liable for uninsured motorist benefits.
However, this court is aware that first party actions against insurers, such as uninsured and underinsured motorist actions, are increasingly accompanied by bad faith claims and CUTPA/CUIPA actions. Not infrequently, these additional claims are themselves brought in bad faith, to "up the ante" at pretrial and trial by increasing the insurer's exposure; to exponentially increase the scope of discovery, with the hope of obtaining the insurer's entire file, including its work-product investigation; and for purposes of trial strategy. In such cases, the prejudice to the defendant is evident.[5]
Practice Book § 133 provides in pertinent part that "in any case in which several causes of action are joined in the same complaint, or as matter of counterclaim or setoff in the answer, if it appears to the court that they cannot all be conveniently heard together, the court may order a separate trial of any such cause of action or may direct that any one or more of them be deleted from the complaint or answer." See also General Statutes § 52-97.[6]
Practice Book § 283 similarly provides, in relevant part: "In all cases, whether entered upon the docket as jury cases or court cases, the court may order that one or more of the issues joined be tried before the others." See also General Statutes § 52-205.[7]
Pursuant to these provisions, the court orders that the trial of the third, fourth, fifth and six counts be bifurcated from the trial of the uninsured motorist action. And, since discovery has been held to be an aspect of the trial; cf. Anderson v. Snyder,91 Conn. 404, 408, 99 A. 1032 (1917); Donaghue v. Nurses Registry,Inc., 40 Conn. Sup. 196, 197, 485 A.2d 945 (1984); Helfferich v.Farley, 36 Conn. Sup. 333, 334, 419 A.2d 913 (1980); the court further orders, pursuant to Practice Book § 221,[8] that discovery relating to those counts be deferred until after the trial of the uninsured motorist action.
BY THE COURT
CT Page 7484
Bruce L. LevinJudge of the Superior Court