[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Jon Hennessey instituted this proceeding on behalf of his minor son, Blaike, to recover underinsured motorist benefits from Travelers Property Casualty Insurance Co., as a result of an accident in which Blaike was hit by a car while riding his bicycle. The operator of the motor vehicle settled with the plaintiff's for one hundred thousand ($100,000) dollars, the limit of his policy. The plaintiff's then proceeded under his underinsured motorist coverage which has a hundred thousand ($500,000) dollar limit. After attempts at settlement failed, this action was brought in three counts — breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Insurance Practices Act (CUIPA). The CUIPA count specifically alleges that the defendant performed unfair claim settlement practices under § 38a-816(6) of the General Statutes.
The defendant has moved to strike counts two and three of the complaint arguing that they are legally insufficient or, in the alternative, it requests if its motion to strike is denied, that the court bifurcate the discovery and trial portions of the underinsured motorist claim from the bad faith and CUIPA claims to prevent undue prejudice.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Waters v. Autuori, 236 Conn. 820, 825-26 (1996). See also Practice Book § 152, now Practice Book (1998 Rev.) §10-39. "The motion [to strike] may . . . be used to test whether CT Page 4799 Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Castelvetro v.Mills, Superior Court, judicial district of New Haven, Docket No. 320396 (February 1, 1994, Gray, J.) (11 Conn. L. Rptr. 29).
Our Supreme Court has established that uninsured and underinsured motorist coverage is "person oriented," not "vehicle oriented" when it held that "[a]n insured's status at the time of the injury, whether passenger, pedestrian, or driver of an insured or uninsured vehicle, is irrelevant to recovery under the statutorily mandated coverage. . . . The coverage is portable: The insured and family members . . . are insured no matter where they are injured. They are insured when injured in an . . . unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick. . . ." (Citations omitted; internal quotation marks omitted.) Harvey v. Travelers IndemnityCo., 188 Conn. 245, 250 (1982).
The defendant argues that a common law bad faith claim must allege outrageous conduct and ill will, which the plaintiffs have failed to do and therefore, count two is legally insufficient. It continues by saying that a bad faith claim cannot properly be brought with an underinsured motorist claim because no fiduciary relationship exists between the insurer and insured until the plaintiff's show the tortfeasor's liability. Additionally, since the plaintiffs have not shown that they are legally entitled to recover from the tortfeasor, there can be no bad faith denial of coverage.
In response, the plaintiffs assert that our Supreme Court recognizes an implied covenant of good faith and fair dealing in every contract, including insurance contracts. Furthermore, the plaintiffs aver that their second amended complaint specifically alleges sufficient facts to prove bad faith and that under §38a-321 of the General Statutes, the carrier is obligated to pay for any loss under a policy even if final judgment has not yet been rendered.
Our Supreme Court has recognized an implied covenant of good faith and fair dealing in insurance contracts. Buckman v. PeopleExpress, Inc., 205 Conn. 166, 170 (1987); Hoyt v. Factory MutualLiability Ins. Co., 120 Conn. 156, 159 (1935). The concept is essentially a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. (Internal quotation marks omitted.) The CT Page 4800 determination of whether an insurance company acted in good faith in settling a claim requires a case-by-case analysis. SeeVerrastro v. Middlesex Ins. Co., 207 Conn. 179, 190 (1988). "Good faith and fair dealing mean an attitude or state of mind denoting honesty of purpose, freedom from intention to defraud and generally speaking means [being] faithful to one's duty or obligation. . . ." Buckman v. People Express, Inc., supra, 171. "The definition [of good faith] requires not only honesty in fact but also `observance of reasonable commercial standards of fair dealing.'" Cadle Company v. Ginsburg, 51 Conn. App. 392, 399
(1998), quoting § 42a-3-103(a)(4) of the General Statutes.
Therefore, an insurer who acts unreasonably and in bad faith by withholding insurance benefits may be liable in tort. Yet, only if the insured sues for punitive damages must the tortious conduct be alleged in terms of wanton and malicious injury, evil motive and violence and outrageous conduct. See L. F. Pace Sons, Inc. v. Travelers Indemnity Co., 9 Conn. App. 30, 48
(1986). Allegations that do not reach to this level of extreme conduct are still viable for compensatory damages and will survive a motion to strike as long as the complaint alleges more than the fact that the defendant failed to pay the claim. SeeBurnside v. Nationwide Mutual Ins. Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 343068 (September 18, 1997, Melville, J.) (complaint alleging that defendant refused to enter into good faith settlement negotiations, forced the plaintiffs to institute litigation to collect their insurance and failed to reasonably investigate the plaintiffs' claim survives a motion to strike). An insurance company may be liable for breach of the covenant of good faith and fair dealing if its behavior is unreasonable and beyond accepted commercial standards.
In the present case, the plaintiffs have alleged that the defendant has breached the covenant of good faith and fair dealing when it "(1) substantially discounted their claim, (2) failed to enter good faith settlement discussions, (3) failed to respond to the plaintiffs' communications, and (4) compelled them to commence litigation to recover sums due to them pursuant to the subject underinsured motorist insurance contract." (Plaintiffs' Brief, pp. 3-4.) Taking the facts in the complaint in the light most favorable to sustaining their legal sufficiency, the court finds that the plaintiffs' allegations are detailed enough to withstand a motion to strike, and therefore the bad faith claim is sufficiently pleaded. CT Page 4801
Although there is a split of authority among different jurisdictions as to whether "a claim for breach of the covenant of good faith and fair dealing may be joined with an action for uninsured [or underinsured] motorist benefits," a recent Superior Court decision held that "[i]n Connecticut, there is no requirement that a claimant who seeks uninsured [or underinsured] motorist benefits must first obtain a judgment against the tortfeasor." Khanthavong v. Allstate Insurance Co., Superior Court, judicial district of Fairfield, Docket No. 324502 (December 3, 1996, Levin, J.) (18 Conn. L. Rptr. 304). Furthermore, § 38a-336(b) of the General Statutes requires only that the plaintiff exhaust all other possible insurance coverage and liability bonds through payment of judgments or settlements before collecting from its underinsured motorist policy. In Ciarelli v. Commercial Union Ins. Cos., 234 Conn. 807,810-11 (1995), our Supreme Court agreed with the arbitration panel that the plaintiff must exhaust the insurance policies of both the underinsured tortfeasor and the owner of the vehicle driven by the tortfeasor prior to receiving underinsured motorist benefits. The claims may be exhausted by settlement as was done in this case. The tortfeasor settled with the plaintiffs for the full amount of his policy, properly exhausting the liability coverage.
The defendant's argument which is supported by foreign decisions is unconvincing. Our statutes that apply in those cases have different criteria. Judge Levin, in Khanthavong v. AllstateInsurance Co., 18 Conn. L. Rptr. 304, easily distinguishes those nonbinding cases, stating that "[a] rule precluding insurer liability for bad faith where the issue of liability has not been resolved is appropriate in those states where an insured is required to secure a judgment against the uninsured motorist before being entitled to uninsured motorist benefits." See Quickv. State Farm Mutual Automobile Insurance Co., 429 So.2d 1033
(Ala. 1983), 2 Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. 1998) § 20.1 et seq., p. 141. Connecticut law requires only that the insured be "legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles. . . ." Section38a-336(a)(1) of the General Statutes. This occurs when judgment is rendered against or settlement is reached with the underinsured motorist. Since the plaintiffs settled with the tortfeasor for the full amount of the policy, they have exhausted the liability coverage and may bring an action against the CT Page 4802 defendant for breach of the covenant of good faith and fair dealing for not paying the underinsured motorist benefits.
As to count three, the defendant argues that the Connecticut courts do not recognize a private right or cause of action under CUIPA. Our Supreme Court has yet to address this issue. SeeNapoletano v. Cigna Healthcare of Connecticut, Inc.,238 Conn. 216, 221 n. 5 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1106,137 L.Ed.2d 308 (1997); Lees v. Middlesex Ins. Co.,229 Conn. 842, 847 n. 4 (1994); Mead v. Burns, 199 Conn. 651, 657 n. 5 (1986), Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 521
n. 12 (1982) (in a narrow decision, holding that plaintiffs who allege a private right of action under CUIPA do not first have to exhaust their administrative remedies). While there is a split of authority among the trial courts, this court has previously concluded that the arguments supporting a finding of no private cause of action for CUIPA claims are more persuasive. See Josephv. Hannan Agency, Inc., Superior Court, judicial district of Danbury, Docket No. 323310 (January 9, 1997, Moraghan, J.).
Taking reasoning from several Superior Court decisions, this court in Joseph v. Hannan Agency, Inc. found "no express authority under CUIPA for a private cause of action" and concluded that "CUIPA is not ambiguous; by its express terms, CUIPA is a regulatory act, authorizing the insurance commissioner to investigate practices." Id., quoting Allessa v. AllstateInsurance Co., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 050550 (November 7, 1995,Skolnick, J.) (16 Conn. L. Rptr. 317). Moreover, "[e]ven if the provisions of CUIPA are ambiguous as to a private right of action, the existence of such a right should not be recognized. This is `because CUIPA authorizes the imposition of criminal penalties for the commission of the conduct it proscribes . . . [and] ambiguity in penal statutes requires a construction limiting rather than expanding civil liability.'" Joseph v.Hannan Agency, Inc., supra, Superior Court, Docket No. 323310, quoting Mead v. Burns, supra, 199 Conn. 658. See also C MTechnology, Inc. v. The Travelers Ins. Co., Superior Court, judicial district of Middlesex, Docket No. 072968 (April 5, 1995,Stanley, J.) (14 Conn. L. Rptr. 32) (CUTPA authorizes an express right of action, while CUIPA is silent).[1]
The plaintiffs in the present case claim that the defendant so frequently violated CUIPA that it would be considered a general business practice and therefore creates a private cause CT Page 4803 of action under Mead v. Burns, supra, 199 Conn. 659 and Lees v.Middlesex Ins. Co., supra, 229 Conn. 842. The plain language of § 38a-816(6) requires that the plaintiffs alleging unfair claim settlement practices show "frequency [of violations] as to indicate a general business practice. . . ." Yet, "proof of an insurer's commission of two or more unfair claim settlement practices in relation to only one insurance claim" is insufficient "to satisfy the `general business practice' requirement of 38a-816(6)." Lees v. Middlesex Ins. Co., supra, 848. In Mead v. Burns, supra, our Supreme Court held that claims "under CUIPA require a showing of more than a single act of insurance misconduct." The plaintiffs in the case at bar have not sufficiently alleged repeated violations of CUIPA so as to rise to the level of a general business practice. They allege that the defendant violated four provisions of § 38a-816(6), all stemming from the one insurance claim.
"The interests served by bifurcated trials are convenience, negation of prejudice and judicial efficiency." O'Shea v.Mignone, 50 Conn. App. 577, 582, cert. denied, 247 Conn. 941
(1998). In the present case, bifurcation would be more inconvenient and less efficient because both claims stem from the same transaction, with similar evidence and witnesses. This court concludes that any possible prejudice to the defendant in having both issues tried together is minimal and outweighed by the need for judicial economy.
The motion to strike count two is, accordingly, denied, and the motion to strike count three is granted. The request to bifurcate is also denied.
Moraghan, J.